926 So.2d 961 (2006)
Derek GRAY, Appellant,
v.
STATE of Mississippi, Appellee.
Derek Gray, Appellant,
v.
State of Mississippi, Appellee.
Nos. 2004-KA-01915-COA, 2004-M-00213-COA.
Court of Appeals of Mississippi.
April 25, 2006.
*964 Minor F. Buchanan, Jackson, attorney for appellant.
Office of the Attorney General by John R. Henry, attorney for appellee.
Before MYERS, P.J., SOUTHWICK, IRVING and BARNES, JJ.
IRVING, J., for the Court.
¶ 1. Derek Gray was convicted by a Hinds County jury of possession of more than thirty grams of cocaine. Because he had two prior felony convictions and qualified as an habitual offender, Gray was sentenced by the Hinds County Circuit Court to life imprisonment in the custody of the Mississippi Department of Corrections. Gray appeals his conviction and raises the following contentions, which we list verbatim:
1. THE JURY VERDICT WAS CONTRARY TO THE OVERWHELMING WEIGHT OF THE EVIDENCE.
2. THE LOWER COURT ERRED IN NOT GRANTING THE MOTION FOR A DIRECTED VERDICT AT THE CLOSE OF THE STATE'S CASE, AT THE CONCLUSION OF THE TRIAL, A PEREMPTORY INSTRUCTION, AND FOR NOT GRANTING THE MOTION FOR A NEW TRIAL OR JUDGMENT NOTWITHSTANDING THE VERDICT ON THE MERITS AND AFTER NEW EVIDENCE WAS FOUND.
3. THE LOWER COURT ERRED IN DENYING THE DEFENDANT'S SUCCESSIVE MOTIONS FOR DISCOVERY TO BE PROVIDED WITH CRITICAL TRIAL TESTIMONY OF ROBERT SHEGOG AND RICHARD *965 MCGAHEY WITH THE JACKSON POLICE DEPARTMENT.
4. THE LOWER COURT ERRED IN OVERRULING THE DEFENDANT'S OBJECTIONS, DENYING THE DEFENDANT'S MOTIONS FOR DISMISSAL, AND DENYING A CONTINUANCE AS A RESULT OF THE STATE'S DISCOVERY VIOLATIONS AT THE BEGINNING OF TRIAL.
5. THE LOWER COURT ERRED IN ALLOWING PORTIONS OF THE TESTIMONY OF ROBERT SHEGOG AND THE ENTIRE TESTIMONY OF RICHARD MCGAHEY FOR DISCOVERY VIOLATIONS, THE PROSECUTION HAVING NOT PROVIDED NOTICE OF SAID TESTIMONY AS REQUIRED BY RULE 9.04 OF THE UNIFORM RULES OF CIRCUIT AND COUNTY COURT PRACTICE.
6. THE LOWER COURT ERRED IN DENYING THE DEFENDANT'S MOTION TO DISMISS FOR FAILURE TO PROVIDE A SPEEDY TRIAL.
7. THE LOWER COURT ERRED IN ALLOWING THE STATE TO AMEND THE INDICTMENT TWICE.
8. THE LOWER COURT ERRED IN FINDING PROBABLE CAUSE BASED ON AN UNDISCLOSED CONFIDENTIAL INFORMANT.
9. THE LOWER COURT ERRED IN DENYING THE DEFENSE MOTIONS TO SUPPRESS AND THEREBY ADMITTING AS EVIDENCE STATEMENTS OF THE DEFENDANT AND DRUG EVIDENCE TAKEN FROM THE SCENE.
10. THE LOWER COURT ERRED IN DENYING THE DEFENSE MOTION IN LIMINE REGARDING A PRIOR MANSLAUGHTER CONVICTION OF THE DEFENDANT HAVING THE EFFECT OF DENYING HIM THE OPPORTUNITY TO TESTIFY IN HIS OWN BEHALF.
11. THE LOWER COURT ERRED IN DENYING THE DEFENSE ITS POST-TRIAL MOTION FOR FUNDS TO RETAIN A HANDWRITING EXAMINER TO AUTHENTICATE NEWLY DISCOVERED EVIDENCE.
12. THE LOWER COURT ERRED IN ITS GRANTING AND REFUSING OF SPECIFIC JURY INSTRUCTIONS.
13. THE SENTENCE OF THE LOWER COURT IS UNCONSTITUTIONALLY CRUEL AND UNUSUAL.
14. THE VERDICT OF THE JURY SHOULD BE SET ASIDE AS THE APPELLANT WAS DENIED A FAIR TRAIL DUE TO INEFFECTIVE ASSISTANCE OF COUNSEL.
Finding no error, we affirm.

FACTS
¶ 2. On April 25, 2001, a search warrant was executed at 813 Grandberry Street in Jackson by the Jackson Police Department. When the police arrived, two individuals, Gray and a woman, were standing in the yard of the house. Six more individuals were discovered inside the house. Four rocks of cocaine were found outside the house, on the ground near where Gray and the woman had been standing, and significantly more cocaine was found inside the house. In total, over thirty grams of cocaine were recovered from the property. All the individuals at the location were charged with possession of the entire amount of the cocaine.
¶ 3. On April 25, the day the search warrant was executed, Gray gave a statement to police waiving his Miranda rights and disavowing ownership of any of the cocaine. During this statement, Gray stated that he resided at 813 Grandberry *966 Street. When asked specifically, "How many people were located inside of your house," Gray responded, "A lot of them." Additionally, an Entergy bill in Gray's name and addressed to 813 Grandberry Street was found at the scene.[1] In short, it is undisputed that 813 Grandberry Street, a one-bedroom house, was Gray's residence.
¶ 4. On May 9, 2001, Gray contacted the lead detective on the case, Robert Shegog, and gave another statement. The substance of this statement was essentially that Gray knew about the cocaine in the house, but that it was not his. Instead, Gray explained that "they [the individuals in the house] will give me something to smoke and I will go on by my way while they gambling and celling [sic] dope. . . . They told me if any dope be in the house that they goneing [sic] to hold up for it. . . ." Gray indicated that he was aware that drugs were being sold at the house, and that he had witnessed drugs being sold at the house. Along with a Miranda waiver, the statement also contained a separate waiver signed by Gray that indicated that "[n]o promises or threats have been made to me and no pressure or coercion of any kind has been used against me."
¶ 5. After a jury trial, Gray was convicted and sentenced to life. Shortly after trial, Gray produced a "newly discovered" document. The document, which appeared to be a Miranda waiver form, was allegedly signed by both Gray and Shegog. At the bottom, Gray had written:
On 4-25-01 I gave this statement to Det. Robert Shegog because he has released me from this charge that happen [sic] on 4-25-01 at 813 Grandberry St. Jackson, Ms. Det. Robert has asked me to write down what I think might had happen and to agree to what he puts on his report . . . [illegible] . . . Det. Robert Shegog has not put the charge of possession of cocaine on [cut off] at all and I am free from this charge of poss. of cocaine on 4-25-01 at 813 Grandberry [cut off] this is a insurance of our agreement that I was and am INNOCENT. I [cut off] know nothing about any drugs at all. The END.
This paragraph was written below the signatures on the paper. At a posttrial hearing, Shegog denied having signed the document or ever having seen it before. Shegog also testified that the form was similar, but not the same, as a form used by the Jackson Police Department. The right side of the paper, where a case number would generally be located, was inexplicably ripped off.
¶ 6. Gray maintained that he had not been able to locate the paper before trial, but was able to find it by making a few phone calls from jail after he was convicted. Gray was unable to give the full names of any of the people who had worked to get the document to him. When the document was presented to the court, it was apparently severely damaged, both by tears in the paper and blotches of ink. When questioned, Gray could provide no explanation for the condition of the document. Gray's attorneys requested that the court order that a forensic handwriting expert look at the document to determine whether Shegog's signature was authentic. The court declined, ruling that there was nothing credible about the document to warrant providing funds for a forensic handwriting expert.
*967 ¶ 7. The court denied all the posttrial motions filed by Gray. The Hinds County Public Defender's Office, which had handled Gray's trial representation, does not represent him on appeal. Instead, Gray is represented by Minor F. Buchanan on appeal. Additional facts will be given as necessary in the remainder of this opinion.

ANALYSIS AND DISCUSSION OF THE ISSUES

1. Weight of the Evidence[2]
¶ 8. When making this review, we will reverse only if Gray's conviction is "so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice." Dilworth v. State, 909 So.2d 731, 737(¶ 21) (Miss.2005) (quoting Bush v. State, 895 So.2d 836, 844(¶ 18) (Miss.2005)). We will weigh the evidence "in the light most favorable to the verdict." Bush, 895 So.2d at 844(¶ 18). In order for us to reverse, the trial court must have "abused its discretion in denying a motion for new trial." Dilworth, 909 So.2d at 737(¶ 20). "Only in `exceptional cases in which the evidence preponderates heavily against the verdict' should the trial court invade the province of the jury and grant a new trial." Id. (quoting Amiker v. Drugs for Less, Inc., 796 So.2d 942, 947(¶ 18) (Miss.2000)).
¶ 9. Gray contends: "Considering the quality of the evidence and the improper tactics of the prosecutionwhich clearly swayed the juryit is clear that this verdict should be considered against the overwhelming weight of the evidence." Gray specifically argues that "when the co-defendants are clearly identified as they were in this case as the owners and possessors of the contraband in question and for which they were individually prosecuted, the presumption that any of those items were possessed by the appellant has been substantially overcome."
¶ 10. We find that the verdict in this case was not against the overwhelming weight of the evidence. Gray focuses on the fact that Shegog gave conflicting testimony the day before trial began when he testified that he had never taken a statement from Gray prior to the May 9 statement. Gray's attorneys questioned Shegog extensively about this during their cross-examination of him during trial, and attempted to convince the jury that Shegog's testimony was not credible as a result. Shegog explained that his misstatement was a mistake caused by the large amount of evidence that had been collected in the case and the lengthy time period between the arrest and trial.
¶ 11. We note first that Gray's attorneys cross-examined Shegog in the presence of the jury regarding his incorrect statement. We also note that "[the Mississippi Supreme Court] [has] routinely held that the jury is the judge of the credibility of a witness. . . . Matters regarding the weight and credibility to be accorded the evidence are to be resolved by the jury." Price v. State, 898 So.2d 641, 652(¶ 25) (Miss.2005) (citations omitted). Once Gray's attorneys had brought out the inconsistency in Shegog's sworn testimony, it was up to the jury to determine whether Shegog was credible. Additionally, the statement that Shegog initially denied the existence of was not any more exculpatory than Gray's May 9 statement to the police. The April 25 statement was brief, stating little more than that Gray lived at the house and claimed that he did not own the drugs that had been found inside. The *968 only real distinction in the May 9 statement was that Gray provided the names of the individuals in the house (which the police officers had already learned when they arrested everyone in the house) and stated that he was aware that drugs were being sold from the house. Gray still denied in the May 9 statement that he owned the drugs himself. Therefore, we see nothing in Shegog's testimony that requires reversal of Gray's conviction.
¶ 12. Additionally, there was ample evidence of Gray's guilt beyond Shegog's testimony. Gray himself admitted in his statements to the police that he (1) resided in the house at 813 Grandberry Street, (2) agreed to let the house be used in exchange for money and drugs, and (3) was aware that illegal drugs were being sold from the house. As already discussed, the evidence was undisputed that Gray was in possession of the one-bedroom house at 813 Grandberry Street in Jackson. As pointed out by Gray, "[a] presumption of constructive possession arises against the owner of premises upon which contraband is found." Smith v. State, 839 So.2d 489, 497(¶ 21) (Miss.2003) (citing Hamm v. State, 735 So.2d 1025, 1029(¶ 13) (Miss.1999); Hamburg v. State, 248 So.2d 430, 432 (Miss.1971)).
¶ 13. Gray recognizes the presumption that arises against him as the sole occupying resident of the house, but argues that the presumption was overcome. We disagree. The presumption is rebutted when there are no "additional incriminating facts" connecting the defendant to the contraband. Powell v. State, 355 So.2d 1378, 1379 (Miss.1978). Here, there is an additional incriminating fact in the form of Gray's statement that he was in possession of the house and was fully aware that cocaine was being sold in the house. We find that Gray's proven awareness of the drugs and acceptance of drugs and money in return for allowing the others to use his home as a crack house were sufficient to show that he "exercised control" over the cocaine. See Hamm, 735 So.2d at 1029(¶ 13). We also note that the State's version of events was uncontradicted, since Gray did not take the stand in his own defense or present any other evidence to rebut the State's evidence.
¶ 14. Given the extensive evidence provided by the State and the lack of contradicting evidence provided by Gray, the verdict was not against the overwhelming weight of the evidence, no unconscionable injustice occurred, and the court did not abuse its discretion in failing to grant Gray a new trial.

2. Sufficiency of the Evidence
¶ 15. When reviewing the sufficiency of evidence in a case, we examine "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Dilworth v. State, 909 So.2d 731, 736(¶ 17) (citing Jackson v. Virginia, 443 U.S. 307, 315, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)). We will reverse only if we find that the court abused its discretion in upholding the jury's determination. Id. (citing Howell v. State, 860 So.2d 704, 764 (¶ 212) (Miss.2003)).
¶ 16. Gray argues that the testimony of Shegog and other prosecution witnesses was "discredited," and, at the most, "it [the question of Gray's guilt] should have gone to the jury only on those small quantity of drugs found in the vicinity of where the appellant had been standing." As to Shegog's testimony, as we have already noted, it is the responsibility of the jury to determine the credibility of a witness. Gray's conviction indicates that the jury believed Shegog's explanation of Shegog's misstatement on the stand.
*969 ¶ 17. As support, Gray cites Henley v. State, 729 So.2d 232, 238(¶ 25) (Miss.1998), where the Mississippi Supreme Court reversed a conviction, holding that a defendant could not be convicted of grand larceny absent evidence regarding the value of the truck stolen. Although Gray characterizes the holding of the case as that there was no "credible evidence" of the truck's value, we note that the court's holding was that there was "no proof" as to the value of the truck. Id. We find Henley is distinguishable from the present case because no evidence whatsoever was presented in Henley; here, Gray is simply challenging the credibility of the evidence presented.
¶ 18. Gray also cites Alford v. State, 656 So.2d 1186, 1190-91 (Miss.1995), where the Mississippi Supreme Court reversed a conviction because it found that the prosecution had failed to prove that the defendant possessed the requisite intent to commit burglary. As in Henley, however, the court stated: "In the case at bar there is no showing of evidence of intent on Alford's part to commit a crime." Id. at 1190 (emphasis added). The circumstances are notably different in the present case.
¶ 19. In Clemons v. State, 473 So.2d 943, 944-45 (Miss.1985), which Gray also cites, the Mississippi Supreme Court reversed a murder conviction after finding: "This Court has difficulty understanding how the jury was able to extrapolate enough competent facts from the many versions of the story to sufficiently support the finding of murder. From the record there is more than enough conflicting evidence to cast at least a reasonable doubt, as to murder." Id. at 945. We note that, although Gray's attorneys did question the credibility of Detective Shegog's testimony, most of the State's evidence remained entirely uncontradicted. In fact, as we have already noted, since Gray did not take the stand himself, only the State's evidence was presented to the jury. Thus, we find that Clemons is also distinguishable because it was the "conflicting evidence" that led the Clemons court to reverse, but there is little conflicting evidence in the present case.
¶ 20. Finally, Gray cites Biles v. State, 338 So.2d 1004, 1004 (Miss.1976), where a defendant's capital murder conviction was reversed because the evidence "was sufficient to support a conviction for murder but was not sufficient to support a conviction for capital murder because the proof did not show beyond a reasonable doubt that the defendant murdered Henry Muller while engaged in the commission of the crime of kidnapping." Id. (citing Miss. Code Ann. § 97-3-19(2)(e) (Supp.1975)). The Biles court gave little explanation other than that the evidence was insufficient to sustain the capital murder conviction.
¶ 21. In the present case, we find that there was sufficient evidence from which a reasonable jury could convict Gray. Although Gray's attorneys attempted to discredit Shegog's testimony, a reasonable jury certainly could believe his explanation of why he forgot Gray's first statement during his pretrial testimony. Even if the jury had discredited Shegog's testimony, there was sufficient additional evidence from which the jury could convict Gray. A statement was presented wherein Gray indicated that he possessed the house where the drugs were found, and an Entergy bill addressed to Gray corroborated this statement. In an additional statement, Gray disclosed that he was fully aware of the cocaine that was being dealt from the house, and that he was allowing the drugs to be sold in his house in return for money and drugs. In short, there was more than sufficient evidence from which a reasonable jury could find Gray guilty of possession. Therefore, the court did not abuse *970 its discretion in refusing to overturn the jury's decision.

3. Discovery, Continuance, and Testimony[3]
¶ 22. Under this issue, Gray alleges that the court erred in allowing the testimony of Shegog "when officer Shegog presented testimony previously not disclosed" because the testimony "effectively denied [Gray's] right to confront." Gray also complains that Richard McGahey, another officer with the Jackson Police Department, presented testimony that had not been disclosed to the defense before trial. Gray refers to the testimony Shegog gave that he saw Gray throw something down to the ground as the police drove up to the house. Although it is not entirely clear, we assume that Gray objects to McGahey's report, which was not given to the defense until shortly before trial, rather than any testimony offered by McGahey during trial. Gray also objects to the prosecution's disclosure of Gray's April 25 statement at the "eleventh hour."
¶ 23. As support, Gray cites Rule 9.04 of the Uniform Rules of Circuit and County Court, which states in part that the prosecution in a criminal case must disclose: "Names and addresses of all witnesses in chief ... together with a copy of the contents of any statement, written, recorded or otherwise preserved of each such witness" as well as "[a]ny exculpatory material concerning the defendant." The rule also states:
If at any time prior to trial it is brought to the attention of the court that a party has failed to comply with an applicable discovery rule or an order issued pursuant thereto, the court may order such party to permit the discovery of material and information not previously disclosed, grant a continuance, or enter such other order as it deems just under the circumstances.
URCCC 9.04(I.) (emphasis added). The rule then goes on to state:
If, after such opportunity, the defense claims unfair surprise or undue prejudice and seeks a continuance or mistrial, the court shall, in the interest of justice and absent unusual circumstances, exclude the evidence or grant a continuance for a period of time reasonably necessary for the defense to meet the non-disclosed evidence or grant a mistrial.
Id. at 9.04(I.)(2.). Gray contends that this rule requires a reversal of his conviction.
¶ 24. The State responds that the portion of the record cited by Gray concerned only a possible discovery violation due to Shegog's failure to recognize the April 25 statement in his testimony. The hearing contained no information regarding testimony that Gray was seen throwing anything to the ground as the officers drove up. As the State points out, when Shegog actually testified at trial that he saw Gray drop something as the officers drove up, a fact that Shegog had failed to include in any of his reports, there was no objection whatsoever from the defense.[4] There was *971 also no objection made when McGahey testified that cocaine was discovered on the ground where Gray had been standing. The State also argues that any testimony by Shegog or McGahey that Gray threw something or was standing on top of cocaine could not constitute surprise or prejudice to Gray, since one of the defense's pretrial requests was as to whether another detective would testify that he had seen Gray throw something to the ground as the officers approached.
¶ 25. The State would basically have us hold that Gray's appeal brief alleges only that reversal is required because of the testimony of Shegog and McGahey; according to the State: "The alleged discovery violation that was asserted in the trial court is not here for review because the Appellant has not asserted it here." We believe that the State too narrowly construes Gray's appeal. We agree that Gray's contention concerning Shegog's testimony that he saw Gray throw something to the ground is procedurally barred because there was no objection whatsoever to the testimony at trial. Willis v. State, 911 So.2d 947, 950(¶ 12) (Miss.2005). However, after having reviewed Gray's brief, we find that he does assert as an issue the discovery violation that was raised at trial. Gray is explicit in his brief that he is objecting to not only the testimony of Detective Shegog, but also McGahey's report that was given to the defense only on the morning of trial. However, "[the Mississippi Supreme Court has] ruled that a violation of Rule 9.04 is considered harmless error unless it affirmatively appears from the entire record that the violation caused a miscarriage of justice." Wyatt v. City of Pearl, 876 So.2d 281, 284(¶ 10) (Miss.2004) (citing Payton v. State, 897 So.2d 921, 942(¶ 67) (Miss.2003)). Even in cases where it has been found that there was a clear discovery violation, the violation has been held to be harmless error where there was no prejudice suffered by the defendant. Jones v. State, 669 So.2d 1383, 1392 (Miss.1995).
¶ 26. In the present case, it is clear that no prejudice was suffered by Gray. Although McGahey's report was not included in the record, when the late disclosure of the report was discussed with the court, Gray's attorneys could make no argument for why the late disclosure had caused any prejudice to Gray. In fact, it was his attorneys' inability to show prejudice that led the trial court to refuse to grant a continuance or a mistrial. Since no prejudice occurred, the prosecution's violation of Rule 9.04 and the court's refusal to grant a continuance are harmless error at most, and do not require reversal.
¶ 27. For the same reason, we do not find that the late disclosure of Gray's April 25 statement constitutes reversible error. The statement contained no new information that was not in the previously-disclosed May 9 statement. As with McGahey's report, Gray's attorneys were unable to show that the late disclosure of the April 25 statement had caused any prejudice to Gray. Therefore, although the late disclosure of the report constituted a technical violation of Rule 9.04, no prejudice arose to Gray, and, consequently, no reversible error occurred.

3. Speedy Trial
¶ 28. Gray contends that the court erred in failing to dismiss the case for failure of the State to provide a speedy trial. At the outset, Gray admits that "the *972 record is unclear as to the factual basis of his issue." Gray was arrested on April 25, 2001, and indicted on June 14, 2001. He was arraigned on January 12, 2004,[5] and trial began on June 9, 2004. Gray demanded to exercise his right to a speedy trial on December 10, 2003. The court refused to dismiss the case because it found that no prejudice was asserted or shown to have been caused to Gray as a result of the time between arrest and trial.

Constitutional Speedy Trial Right
¶ 29. "The Sixth and Fourteenth Amendments to the United States Constitution, along with Article 3, Section 26 of the Mississippi Constitution, guarantee a defendant the right to a speedy trial." Stark v. State, 911 So.2d 447, 449(¶ 6) (Miss.2005) (citing Young v. State, 891 So.2d 813, 816(¶ 5) (Miss.2005); Hersick v. State, 904 So.2d 116, 121(¶ 3) (Miss.2004)). In reviewing whether a defendant's constitutional speedy trial rights have been violated, the courts of this state look to the factors detailed in Barker v. Wingo, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). Stark, 911 So.2d at 449-50(¶ 6) (citing Price, 898 So.2d at 647-48 (¶¶ 10-11); Young, 891 So.2d at 816(¶ 5); Hersick, 904 So.2d at 121(¶ 3)). Under the constitutional speedy trial analysis, "[t]here is no set amount of time within which a defendant must be brought to trial." Id.
¶ 30. Instead, the Barker test details four factors that must be considered together and balanced: "(1) length of delay, (2) reason for delay, (3) the defendant's assertion of his right, and (4) prejudice to the defendant." Id. at 450(¶ 7) (citing Barker, 407 U.S. at 530-32, 92 S.Ct. 2182; Taylor v. State, 672 So.2d 1246, 1258 (Miss.1996)). The Barker analysis comes into play "when there is a presumptively prejudicial delay." Id. (citations omitted). In Mississippi, "any delay exceeding eight months is presumptively prejudicial." Id. (citing Smith v. State, 550 So.2d 406, 408 (Miss.1989)). In the present case, more than eight months elapsed between trial and Gray's arrest, the event that triggered the calculation of time. Id. (citing Smith, 550 So.2d at 408). Therefore, the period of time elapsed is presumptively prejudicial, and we turn to an analysis of the Barker factors.

Length of Delay
¶ 31. As we have already addressed, over four years elapsed between Gray's arrest and his trial. Therefore, this factor weighs in favor of Gray and necessitates a discussion of the remaining Barker factors. See Stark, 911 So.2d at 450(¶ 10).

Reason for Delay
¶ 32. Unfortunately, the record in this case, as recognized by both Gray and the State, is woefully inadequate. In fact, no reason whatsoever for the delay appears in the record. The reason for the delay is not addressed below by Gray's attorneys, the State, or the court. Therefore, we find that this factor weighs slightly in favor of Gray, since the burden is on the State to explain why there was good cause for a delay. Id. at 450-51(¶ 11) (citing Price, 898 So.2d at 647(¶ 9)).

Defendant's Assertion of His Right
¶ 33. The third Barker factor is whether the defendant asserted his right to a speedy trial. We find that this factor weighs slightly in favor of Gray. Although Gray asserted his right to a speedy trial, he did not do so until December 10, 2003. *973 After assertion of his right, his case was promptly assigned to the court's docket, and he was brought to trial about six months later.

Prejudice to the Defendant
¶ 34. The final factor is whether prejudice was suffered by the defendant because of the delay in being brought to trial. We find that this factor weighs heavily in favor of the State, because no actual prejudice whatsoever has been asserted by Gray, either on appeal or at trial. Gray has not been able to name the "loss of evidence, the death of a witness, or [that] the investigation became stale." Manix v. State, 895 So.2d 167, 177(¶ 22) (Miss.2005) (citing Hughey v. State, 512 So.2d 4, 11 (Miss.1987)). When arguing his speedy trial motion before the trial court, Gray's attorney stated only: "Eight months have passed, prejudice to this defendant," without any explanation of exactly what prejudice had been suffered by Gray. The attorney went on to say "he can't possibly have a fair trial after three years," but did not explain why Gray could not have a fair trial after three years. As pointed out by the prosecutor below, "the defendant has cited no actual prejudice to his case. He's not listed one witness that is missing. . . . He has been incarcerated. However, that was due to a later charge; thus that incarceration did not come as a result of this charge." Gray's appeal brief also fails to cite any actual, specific prejudice whatsoever.
¶ 35. In the absence of any proof of prejudice, or even an allegation of prejudice suffered by Gray, this factor weighs heavily in favor of the State. Because Gray has not been able to allege any prejudice suffered by him as a result of the delay in bringing him to trial, we find that his constitutional right to a speedy trial has not been violated. We recognize that a large amount of time passed between Gray's arrest and his trial, but mere length of time does not violate a defendant's right to a speedy trial. See Manix, 895 So.2d at 177(¶ 24) (holding that delay of nearly four years was not in violation of defendant's constitutional rights where "any presumptive prejudice Manix may have suffered is overwhelmed by the absence of actual prejudice").

Statutory Speedy Trial Right
¶ 36. Defendants in Mississippi are also guaranteed a speedy trial under Mississippi Code Annotated section 99-17-1, as revised, which states: "Unless good cause be shown, and a continuance duly granted by the court, all offenses for which indictments are presented to the court shall be tried no later than two hundred and seventy (270) days after the accused has been arraigned."
¶ 37. In the present case, Gray was arraigned on January 12, 2004, and trial began on June 9, 2004.[6] By our calculation, that means that significantly less than two hundred and seventy days passed between Gray's arraignment and trial, even before subtracting any amounts of time that were for "good cause." Therefore, Gray's statutory right to a speedy trial was not violated.

4. Amendment of the Indictment
¶ 38. In this contention of error, Gray claims that the lower court erred when it allowed the State to amend the indictment twice. At the outset, we note that, although there were indeed two motions to amend the indictment, only the *974 second motion was actually granted. Therefore, there was, in effect, only one amendment to the indictment in this case. The purpose of the amendment was to reflect Gray's habitual offender status. Gray complains specifically that the motions alleged incorrect cause numbers, dates, and misspellings of Gray's name.
¶ 39. As the State correctly points out, although there were clerical errors in the motions to amend, copies of the court orders of Gray's previous convictions were attached to the motions. The copies clearly stated Gray's social security number and date of birth, and the court put the correct cause numbers and dates in its order amending the indictment. Additionally, it is clear that amendments may be made to an indictment in order to reflect a defendant's status as an habitual offender. Willie v. State, 876 So.2d 278, 279 (¶¶ 3-4) (Miss.2004) (citing Rule 7.09 of the Mississippi Uniform Rules of Circuit and County Court; Burrell v. State, 726 So.2d 160, 162 (¶¶ 3-4) (Miss.1998)).
¶ 40. Gray also contends that "the lower court entered what appears to be an ex parte order . . . allowing both amendments." Although it is not clear from the record whether the order was ex parte, no objection was raised to the amendment at trial, and, therefore, Gray is barred from raising the issue on appeal. Williams v. State, 794 So.2d 181, 187(¶ 23) (Miss.2001) (citing Foster v. State, 639 So.2d 1263, 1288-89 (Miss.1994)). Gray contends that "it appearing that the orders were entered ex parte, there would be no place for a contemporaneous objection to be made." However, we note that no objection whatsoever was made to the amendments belownot at sentencing, and not during Gray's motion for a new trial.
¶ 41. Gray also implies that the granting of the motions constitutes plain error when he argues: "It is not clear that an objection needed to be made because the motions were defective on their face . . . and it is without question that these amendments prejudiced the defendant. . . ." Because there were copies of the court conviction orders attached to the motion, and because the trial court clearly placed the correct information regarding the conviction in its order amending the indictment, we do not find that the granting of the motion rose to plain error, if any error at all. Additionally, we note that Gray does not contend that he was not actually convicted of the prior crimes. There is no doubt that he had actually committed the crimes and was subject to habitual offender status. Therefore, his sentencing as a habitual offender could cause no prejudice to him.

5. Confidential Informant and Motions to Suppress
¶ 42. In this issue, Gray contends that the court erred in finding probable cause based on "an undisclosed confidential informant." Gray argues that this error resulted in the admission of improper drug evidence taken from the scene of the crime. Gray's statement of the issue indicates that he also believes that this error led to the "admitting as evidence statements of the defendant. . . ." However, the argument that follows in his brief does not discuss the admission of his statements at trial. Therefore, we decline to find any error based on the admission of Gray's statements at trial, since he has provided no factual or legal argument for why any admission was in error.
¶ 43. The basis of Gray's argument for why the court erred in finding probable cause is that (1) "[i]t is apparent from the testimony of Shegog that the undisclosed confidential informant was an *975 actual witness to the offense for which the appellant was charged,"[7] and (2) "the original of the prepared affidavit was never found." Gray also contends that "[f]or some reason no affidavit was ever executed to justify the issuance of the warrant." We find this particular allegation to be unsupported by the record. Although it is true that the State was unable to present a copy of the affidavit bearing the court's signature, a copy of the affidavit was produced, Shegog testified that he presented the sworn affidavit to the court that issued the search warrant, and the court's order indicated that an affidavit had been presented and used in determining that probable cause existed for the issuance of a search warrant. Therefore, we find that the record clearly supports a finding that an affidavit was executed.
¶ 44. As support, Gray cites State v. Woods, 866 So.2d 422 (Miss.2003), where the Mississippi Supreme Court ruled that information supplied by a confidential informant was insufficient to support the issuance of a search warrant. However, the facts of Woods were notably different from the present case. In Woods, a previously-unknown confidential informant provided testimony that was not corroborated in any way. By contrast, in the present case, Shegog testified that the informant had been used numerous times in the years prior to Gray's arrest and was well-known. Shegog testified that the informant had never given him erroneous information. Shegog also testified that the informant had told police officers that he had witnessed the illegal activities occurring at the home first-hand. Furthermore, before executing the warrant, Shegog conducted surveillance on Gray's house to confirm the veracity of the informant's information. In short, Woods provides no relief to Gray because the informant in this case was known to the police and his information was corroborated by the police.
¶ 45. We find that probable cause was shown to have existed in support of the issuance of the search warrant. Although the signed original of the affidavit supporting the warrant's issuance was lost, a copy of the affidavit was presented, the court's order indicated that it had reviewed an affidavit before issuing the search warrant, and Shegog testified that he had presented the court with an affidavit, although he no longer had the affidavit in his possession. Therefore, no error occurred.

6. Denial of Motion in Limine
¶ 46. In this contention of error, Gray claims that the court erred in refusing *976 to grant a defense motion in limine concerning Gray's prior manslaughter conviction. The defense sought to receive a ruling that the prosecution could not, under any circumstances, mention Gray's previous manslaughter conviction. The defense also offered a proffer of Gray's testimony and contended that Gray could not take the stand unless the State was prevented from impeaching him with information about his conviction. The prosecution contended that the granting of the motion would have been improper because the State would be entitled to question Gray about the manslaughter conviction if he testified to something relevant. For example, if Gray had taken the stand and testified that he had no previous criminal experience, and therefore did not understand what a Miranda waiver was, the State contended that it would then be able to impeach him with his prior manslaughter conviction. The court agreed, and declined to grant the defense's motion in limine.
¶ 47. We find that, while the manslaughter conviction could not have been used for general impeachment, it could have properly been used if Gray took the stand and testified that he had no prior criminal experience. See Gates v. State, 484 So.2d 1002, 1009 (Miss.1986); Wells v. State, 288 So.2d 860, 864 (Miss.1974). In making its determination, the court indicated that it was looking at the factors that had been argued by the parties, the factors found in Rule 609 of the Mississippi Rules of Evidence and Johnson v. State, 525 So.2d 809 (Miss.1988). Motions in limine should generally only be granted where "the material or evidence in question will be inadmissible at a trial." Hersick, 904 So.2d at 127(¶ 41) (quoting McGilberry v. State, 797 So.2d 940, 942(¶ 12) (Miss.2001)). It was certainly not clear in the present case that the evidence in question would have been inadmissible at trial. Therefore, the court did not abuse its discretion in refusing to grant the defense's motion in limine, and no error occurred. See id. at 127(¶ 42).

7. Handwriting Expert
¶ 48. Gray claims that it was error for the trial court to deny him funds to retain a handwriting expert to examine the agreement allegedly entered into and signed by Shegog. Gray contends that a handwriting expert is necessary to determine the authenticity of the document in question. In response, the State argues that the document is "palpably false," and reiterates the findings made by the trial court regarding the document.
¶ 49. As support, Gray quotes extensively from Richardson v. State, 767 So.2d 195 (Miss.2000). In Richardson, the Mississippi Supreme Court found that a lower court erred in failing to grant expert funds to a defendant in order to test seminal fluid for DNA in a rape case. Id. at 197(¶ 2). The seminal fluid in question "was relied upon as evidence that there had in fact been penetration," and not merely "lustful touching of a child." Id. at 197 (¶¶ 4-5). In reaching its conclusion, the court noted: "Under these circumstances the DNA evidence would be relevant and material. It could significantly aid the defense by showing that the semen sample found was not [the defendant's], thus eliminating the semen as objective evidence of penetration." Id. at 199(¶ 15).
¶ 50. "The standard of review of the trial court's denial of expert assistance is that an abuse of discretion occurred such that the defendant was denied due process whereby the trial was fundamentally unfair." Richardson, 767 So.2d at 197(¶ 7) (citing Coleman v. State, 697 So.2d 777, 780 (Miss.1997)). The Richardson court also noted that "determination of *977 whether the State must pay for an expert witness for an indigent defendant must be made on a case by case basis." Id. at 198(¶ 12).
¶ 51. In the present case, we fail to see how the court's denial of funds for a handwriting expert made the trial "fundamentally unfair." Even assuming the best-case scenario for Gray, a handwriting expert would only have been able to show that Detective Shegog actually signed the document. However, Gray's admittedly handwritten statement appeared below Shegog's signature, and there was no indication on the document that Shegog had read Gray's handwritten addition or agreed to it. Additionally, there were sufficient facts from which the court could reasonably deny Gray expert funds, such as: Gray's loss of the statement and limited explanation of how it was recovered, the extremely poor condition of the document, Shegog's denial of having signed any such agreement with Gray, Gray's inability to explain the condition of the document, and the fact that the document was not a form used by the Jackson Police Department. The facts here are notably different from the facts in Richardson, where evidence was being used without any proof that the fluid belonged to the defendant. In the present case, there was no abuse of discretion by the trial court in denying Gray funds with which to hire an expert in handwriting analysis, and therefore no error.

8. Jury Instructions
¶ 52. Gray contends that instructions S-2, S-3, and S-7 were granted in error by the court. Gray also contends that the court erred in refusing to grant D-1, D-2, D-4, D-5, and D-9. In the interest of thoroughness, we will briefly address each of the instructions complained of by Gray.[8]

S-2
¶ 53. Gray argues that S-2 contained an improper statement of the law[9] when it indicated that actual possession did not need to be proven, but only that the confiscated drugs were "subject to" Gray's "dominion and control." S-2 was given as instruction number six to the jury, and states:
The Court instructs the Jury that to constitute "Possession" as applied to this case, it is not necessary that the State prove actual physical possession; it is sufficient if the State establishes that the substance involved was subject to the defendant's dominion and control, and that he was aware or reasonably should have been aware, of its presence and character.
¶ 54. We find Gray's argument regarding this instruction unpersuasive. The Mississippi Supreme Court has repeatedly held: "Constructive possession may be shown by establishing that the drug involved was subject to [the defendant's] dominion or control." Curry v. State, 249 So.2d 414, 416 (Miss.1971) (emphasis *978 added); see also, e.g., Ginn v. State, 860 So.2d 675, 680(¶ 9) (Miss.2003) (affirming jury instruction that stated, "Constructive possession may be shown by establishing that the substance was subject to the Defendant's dominion or control"); Smith v. State, 839 So.2d 489, 497(¶ 21) (Miss. 2003) ("Constructive possession may be shown by establishing dominion or control"); Cunningham v. State, 583 So.2d 960, 962 (Miss.1991) (citing the above language from Curry). No error arose from the inclusion of the words "subject to" in the jury instruction.

S-3
¶ 55. Proposed instruction S-3, which was given to the jury as instruction number seven, states: "The Court instructs the Jury that if you believe ... that the substance was subject to his dominion and control, it is your duty as jurors to find him guilty as charged." Gray objects to S-3 for the same reason as he objected to instruction S-2. Since we have found that the quoted language is a proper statement of the law, we also find no error in the granting of instruction S-3.

S-7
¶ 56. Proposed instruction S-7, which was given as instruction number eleven, states: "The Court instructs the jury that where cocaine is incorporated into some other substance, it is the weight of the entire mixture, rather than just any portion analyzed or tested, that must taken [sic] and considered as the weight for purposes of criminal liability." Gray argues that "while [S-7] might be a correct statement of the law, it was an instruction unsupported by any evidence and was intended to confuse the jury. . . ."
¶ 57. We find that this instruction was an instruction regarding the law as stated by Lewis v. State, 765 So.2d 493, 497-98(¶ 17) (Miss.2000), where the Mississippi Supreme Court held: "where cocaine is incorporated into some other substance, the Legislature intended that the weight of the entire mixture be taken as the weight for purposes of criminal liability." After reviewing the record in this case, we find that S-7 as given is a proper statement of the law, supported by the evidence presented in the case, and is not an improper comment on the facts of the case. No error arose from the court's grant of S-7.

D-1
¶ 58. Proposed instruction D-1 was a peremptory instruction. Since we have already found that the jury's verdict was not against the overwhelming weight of the evidence, and the evidence supporting Gray's conviction was sufficient, we find no error in the court's denial of a peremptory instruction.

D-2, D-4, and D-5
¶ 59. Proposed instructions D-2, D-4, and D-5 were all denied by the lower court. Gray contends on appeal that their denial was error, but provides no argument or case citations to support his contention. Therefore, we decline to consider Gray's contentions regarding these issues: "[The defendant] makes these claims without citing to any law and is therefore procedurally barred from making the arguments." Bush v. State, 895 So.2d at 849(¶ 34) (citing Dycus v. State, 875 So.2d 140, 169 (¶ 146) (Miss.2004)).

D-9 and D-9A
¶ 60. Although instruction D-9, which attempted to elaborate on the concept of constructive possession, was not given, D-9A, which removed a paragraph and added some language, was given. As with the State's instructions, Gray objects specifically to the inclusion of "subject to" in the revised instruction; no objection is made *979 to the deletion of the paragraph. D-9A, as given, states:
The Court instructs the Jury that in this case the defendant is charged under the theory of constructive possession. In order to prove constructive possession, the evidence must convince you, beyond a reasonable doubt, that the defendant was aware of the presence of the particular substance and was intentionally and consciously in possession of it.
There must be sufficient facts to warrant a finding that [sic] defendant was aware of the presence of the particular substance and was intentionally and consciously in possession of it. It need not be actual or physical possession. Constructive possession may be shown by establishing that the drug involved was subject to his dominion or control. Proximity is usually an essential element, but by itself is not adequate in the absence of other incriminating circumstances.
¶ 61. As we have already discussed, the "subject to" language is an acceptable phrasing of Mississippi law concerning constructive possession, language that has appeared directly in Mississippi appellate cases. The Mississippi Supreme Court has also approved jury instructions containing the "subject to" language. Ginn, 860 So.2d at 680(¶ 9). Therefore, no error occurred as a result of the inclusion of "subject to" in instruction D-9A, and Gray's contention to the contrary is without merit.

9. Constitutionality of Sentence
¶ 62. Gray contends that his sentence of life is unconstitutionally cruel and unusual. The sentence was imposed because Gray had previous convictions which established his status as an habitual offender. The sentence was imposed according to Mississippi Code Annotated section 99-19-83, as revised, which states:
Every person convicted in this state of a felony who shall have been convicted twice previously of any felony or federal crime upon charges separately brought and arising out of separate incidents at different times ... shall be sentenced to life imprisonment, and such sentence shall not be reduced or suspended nor shall such person be eligible for parole or probation.
Gray argues that the sentence imposed "shocks the conscience so that a review must be made."
¶ 63. We note that "where a sentence is within the prescribed statutory limits, it will generally be upheld and not regarded as cruel and unusual." Tate v. State, 912 So.2d 919, 933(¶ 48) (Miss.2005) (quoting Stromas v. State, 618 So.2d 116, 123-24 (Miss.1993)). When a sentence "is `grossly disproportionate' to the crime committed, the sentence is subject to attack on the grounds that it violates the Eighth Amendment prohibition of cruel and unusual punishment." Id. at 933(¶ 49). The three factors to look at when determining whether a sentence is proportional are: "(1) the gravity of the offense and the harshness of the penalty; (2) the sentences imposed on other criminals in the same jurisdiction; and (3) the sentences imposed for commission of the same crime in other jurisdictions." Willis v. State, 911 So.2d 947, 951(¶ 17) (Miss. 2005) (quoting Solem v. Helm, 463 U.S. 277, 292-94, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983)).
¶ 64. No attempt has been made by Gray to address the second or third factor of the proportionality analysis. The Willis court held that failure to address all three of the factors bars a defendant's claim on appeal. Id. at 951(¶ 18). In the present case, Gray has only attempted to *980 address one of the factors. Therefore, his claim is procedurally barred. We note that, even if Gray's claim were not procedurally barred, we have already found in prior cases that defendants convicted of possession of a controlled substance may be sentenced to life without the possibility of parole under the habitual offender provisions. See Wall v. State, 718 So.2d 1107, 1114-15 (¶¶ 29-30) (Miss.1998) (citations omitted); Oby v. State, 827 So.2d 731, 734-35(¶ 12) (Miss.Ct.App.2002) (citations omitted).
¶ 65. Since the sentence was within the statutory range, and was in fact mandatory, and since Gray has been unable to show that his sentence is grossly disproportionate to his crime, we find that the court did not err in sentencing Gray to life without the possibility of parole. The sentence was not cruel and unusual.

10. Effectiveness of Counsel
¶ 66. Gray also contends that his trial counsel was ineffective for several reasons. We have recently held that "a claim of ineffective assistance of counsel is best brought at the post-conviction relief stage as the record on direct appeal is generally insufficient to evaluate the claim." Lyle v. State, 908 So.2d 189, 196(¶ 35) (Miss.Ct.App.2005) (citing Read v. State, 430 So.2d 832, 837 (Miss.1983)). "When an ineffective assistance claim is made on direct appeal, the proper resolution is to deny relief without prejudice to the defendant's right to assert ineffective assistance of counsel in a post-conviction relief proceeding." Id. (citing Read, 430 So.2d at 837). When a record appears to be adequate on direct appeal, a Mississippi appellate court may choose to address an ineffective assistance of counsel claim. Id. (citations omitted).
¶ 67. In the present case, we find that the record is inadequate for us to fully address Gray's ineffective assistance of counsel claim. As noted by both parties, the record in this case is lacking in several respects, and evidence may be presented to more fully flesh out Gray's ineffective assistance of counsel claim in a post-conviction relief proceeding. Therefore, we deny relief to Gray on this claim without prejudice to his right to assert his ineffective assistance of counsel claim when seeking post-conviction relief.
¶ 68. THE JUDGMENT OF THE CIRCUIT COURT OF HINDS COUNTY OF CONVICTION OF POSSESSION OF CONTROLLED SUBSTANCE (COCAINE) AND SENTENCE OF LIFE IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AS AN HABITUAL OFFENDER IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO HINDS COUNTY.
KING, C.J., LEE AND MYERS, P.JJ., SOUTHWICK, CHANDLER, GRIFFIS, BARNES, ISHEE AND ROBERTS, JJ., CONCUR.
NOTES
[1] The Entergy bill was mistakenly left out of the record given to this Court. However, Gray does not challenge its existence, and numerous references are made to it in the record. It is clear that an Entergy bill was presented below bearing Gray's name and the address of the house.
[2] Although Gray addresses this issue in conjunction with his second issue, we treat the two issues separately for clarity's sake.
[3] This issue combines issues three, four, and five as stated by Gray. We address these issues together because Gray does so without any distinction between them.
[4] Gray argues in his reply brief that "the assertion ... that `[t]here was no claim of a discovery violation when Shegog testified to having seen the Appellant drop something.' is a complete misstatement of fact. Defense counsel argued this strongly argued this [sic] at trial." Gray then cites us to a particular portion of the record. However, that part of the record has nothing to do with Shegog's testimony that he saw Gray throw something to the ground. The objection discussed in those pages had to do with Shegog's testimony that there was only one statement. Our review of the record discloses no objection whatsoever to Shegog's testimony that Gray threw something to the ground, despite Gray's contentions to the contrary.
[5] Gray's brief states that he was arraigned on July 23, 2001, a date based on pro se pleadings filed by Gray. However, the record contains an arraignment order stating that Gray appeared before the Hinds County Circuit Court for arraignment on January 12, 2004.
[6] The jury was actually impaneled on June 8, 2004, although the trial did not commence until the following morning.
[7] Although Gray does not make any argument concerning the informant's participation in any crime, he does point out that the informant was an "actual witness." The identity of informants who are participants or eyewitnesses to a crime with which a defendant is charged must be disclosed. Swann v. State, 806 So.2d 1111, 1119 (¶¶ 32-33) (Miss.2002). However, in the present case, no allegation of error was raised as a result of the State's nondisclosure of the identity of the eyewitness, and no argument is made on appeal that the non-disclosure of the informant's identity constitutes reversible error. Therefore, we find that, in the absence of a contention that this was error, or that Gray's attorneys requested this information, any error was harmless and does not require reversal. Although Gray's attorneys filed a motion to suppress based on an allegation that "the alleged confidential informant has not provided reliable and credible information in the past," the motion did not ask that the identity of the informant be disclosed. No mention of any problem with the confidential informant was made in Gray's posttrial motion for a new trial. We also note that the record is unclear as to whether the informant witnessed Gray's possession of the cocaine, or merely the sale of a small amount of cocaine. If the informant did not witness possession of the cocaine, his identity would not be required even if a request had been made.
[8] Gray also discusses several of the other proposed instructions, but acknowledges that no objection was made below to the instructions. In the absence of an objection at trial, we find that any objection to those instructions is waived on appeal.
[9] The State contends that Gray did not object to S-2 on this particular ground in the trial court, and his argument is, therefore, waived. Since the discussion regarding objections to proposed jury instructions occurred off the record, and the objections were simply summarized by the court after the discussion, we are left with only the summary of what objections were made to specific instructions. It is not clear from the record whether Gray contended at trial that the instruction was an improper statement of the law. However, regardless of whether the specific objection was made at trial, there is no merit to it.