981 So.2d 972 (2007)
Billy BAILEY, Appellant,
v.
STATE of Mississippi, Appellee.
No. 2006-KA-00011-COA.
Court of Appeals of Mississippi.
June 12, 2007.
Rehearing Denied April 29, 2008.
*973 J. Dudley Williams, Aberdeen, attorney for appellant.
Office of the Attorney General by Deirdre McCrory, attorney for appellee.
Before LEE, P.J., BARNES and CARLTON, JJ.
CARLTON, J., for the Court:
¶ 1. Billy Bailey was convicted by a Chickasaw County Circuit Court jury for the crime of possession of methamphetamine. On appeal, he challenges the denial of his motion to suppress the evidence against him and the sufficiency and weight of the evidence. Finding no error, we affirm his conviction and sentence.

*974 FACTS
¶ 2. Bailey rented a duplex apartment located in Chickasaw County. His girlfriend, Daphne Fowler, spent the majority of her time at Bailey's residence including spending nights there as well. On June 24, 2004, law enforcement officials from the Mississippi Bureau of Narcotics (MBN) and Chickasaw County Sheriffs Office obtained and executed a search warrant upon Bailey's residence and vehicle. Law enforcement officers claimed to have been receiving information over a period of six months that Bailey was involved in the traffic of narcotics. The specific circumstances leading up to Bailey's arrest began with a tip from an unidentified confidential informant which was received by Chickasaw County Sheriff's Deputy Keith Roberson on the morning of June 23rd. The informant communicated to Deputy Roberson that Bailey had picked up three ounces of methamphetamine in Pontotoc County. The informant had never directly purchased methamphetamine from Bailey. Complaints were also received from Bailey's neighbors about the large volume of traffic flowing in and out of his residence.
¶ 3. Upon receiving this information, Deputy Roberson informed MBN Agent Brian Ely and Chickasaw County Sheriff's Deputy Brand Huffman. Deputy Roberson accompanied by another sheriff's deputy began to conduct surveillance on Bailey's residence. The two deputies conducted the surveillance from a barn very close to Bailey's residence. After about thirty to forty-five minutes, Deputy Roberson confirmed that there was indeed a heavy flow of traffic in and out of Bailey's residence because the deputies observed two or three people briefly arrive at and depart from the residence.
¶ 4. After one of the recent visitors departed from Bailey's residence, Chickasaw County deputies stopped the vehicle. The vehicle was driven by Melissa McCree, the person who had recently made a brief stop at Bailey's residence. This stop was based upon the information received by the informant, complaints by Bailey's neighbors, and activity observed through the surveillance of Bailey's residence. McRee was in possession of a methamphetamine "straight shooter" which contained methamphetamine residue. Upon her arrest, she surrendered to the deputies approximately one gram of methamphetamine in two bags.
¶ 5. Deputy Roberson then ceased surveillance of Bailey's residence and proceeded to the county jail in Okolona to question McRee. McRee informed Deputy Roberson that she had purchased methamphetamine from Bailey the day before and that she had purchased from Fowler just prior to the traffic stop. McRee also provided the following written statement:
Went to Billy Bailey's bought 70.00 meth & [methamphetamine] ice. Daphaney came in the bathroom give me the meth & ice and she took the money in the bedroom. Have been going out there about once a week for about three months to buy meth or ice. I have bought from Billy and Daphaney.
¶ 6. After these events had transpired, MBN Agent Ely, Deputy Huffman, and Deputy Roberson submitted an affidavit for a no knock search warrant. The three men each signed the "Underlying Facts and Circumstances" that was submitted to Justice Court Judge Judy Posey. The justice court judge issued the requested search warrant. Law enforcement officials then proceeded to Bailey's residence where they arrested Fowler and recovered methamphetamine. Bailey was apprehended upon his return to the residence. The details of the search warrant and the evidence against Bailey are further discussed *975 below, as they are the substantive issues of this appeal.
¶ 7. On September 29, 2004, Bailey was indicted for the crime of possessing 18.03 grams of methamphetamine. Miss.Code Ann. § 41-29-139(c)(1)(D) (Rev.2005) (punishing the act of possessing more than ten grams but less than thirty grams of methamphetamine, a Schedule II substance under Section 41-29-115). Fowler was also indicted with Bailey and additionally charged with the sale/transfer of methamphetamine.
¶ 8. On October 6, 2005, the jury convicted Bailey of the crime as charged in the indictment. Bailey was sentenced to twenty-four years imprisonment, fined $10,000, and ordered to pay related costs. His appeal has been assigned to this Court.

DISCUSSION
1. Motion to Suppress
¶ 9. Bailey argues that the circuit court committed reversible error by failing to grant Bailey's motion to suppress the evidence against him. Bailey relies on caselaw to conclude that there was no probable cause for the search warrant issued in his case. State v. Woods, 866 So.2d 422, 426(14) (Miss.2003). Bailey specifically challenges the sufficiency of McRee's statement as a basis for the search warrant. He argues that no information was supplied to the justice court judge to determine the reliability of the information the officers received from confidential informants and McRee. We note that the validity of the deputies' search of McRee is not an issue in this appeal, as "Fourth Amendment rights are personal rights . . . which may not be vicariously asserted." Spicer v. State, 921 So.2d 292, 310(¶ 36) (Miss.2006) (quoting Alderman v. United States, 394 U.S. 165, 174, 89 S.Ct. 961, 22 L.Ed.2d 176 (1969)).
¶ 10. There must be a substantial basis for concluding that probable cause existed in order for a search warrant to properly be issued. Culp v. State, 933 So.2d 264, 271(¶ 10) (Miss.2005) (citing Illinois v. Gates, 462 U.S. 213, 238-39, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983)); Petti v. State, 666 So.2d 754, 757 (Miss.1995). An appellate court will overturn the trial court if there was not "substantial credible evidence to support the issuance of the search warrant." Culp, 933 So.2d at 271(¶ 10) (citing Magee v. State, 542 So.2d 228, 231 (Miss.1989)). As stated in Petti, our analysis in determining whether there was substantial evidence for a search warrant is guided by federal case law. Petti, 666 So.2d at 757.
¶ 11. Federal case law employs a "totality of the circumstances" test but still considers the veracity and basis of knowledge of information received by officers as "highly relevant." Id. (quoting Gates, 462 U.S. at 238, 103 S.Ct. 2317). We are mindful that "the information necessary to establish probable cause `must be information reasonably leading an officer to believe that, then and there, contraband or evidence material to a criminal investigation would be found.'" Petti, 666 So.2d at 757 (quoting Rooks v. State, 529 So.2d 546, 554-55 (Miss. 1988)). The Mississippi Supreme Court has summarized relevant considerations in making this determination, stating:
A search warrant may only be issued when the police have demonstrated probable cause by introducing evidence of underlying facts and circumstances before the magistrate granting the warrant. Branch v. State, 347 So.2d 957, 958 (Miss.1977). Probable cause exists when facts and circumstances within an officer's knowledge, or of which he has reasonably trustworthy information, are sufficient within themselves to justify a *976 man of average caution in the belief that a crime has been committed and that a particular person committed it. Bevill v. State, 556 So.2d 699, 712 (Miss.1990). The affidavit is the means of presenting to the issuing magistrate a basis upon which [the magistrate] may determine whether in fact probable cause exists. Bevill, 556 So.2d at 712. In reviewing a magistrate's finding of probable cause, this Court does not make a de novo determination of probable cause, but only determines if there was a substantial basis for the magistrate's determination of probable cause. Smith v. State, 504 So.2d 1194, 1196 (Miss.1987).
Petti, 666 So.2d at 757-58 (quoting Barrett v. Miller, 599 So.2d 559, 566 (Miss.1992)). Additional considerations that are not relevant here may include oral testimony given before the warrant issuing judge, and whether a defendant makes a substantial preliminary showing that false statements were made by an affiant. Id. at 758 (citations omitted).
¶ 12. In Woods, the case upon which Bailey relies, the Mississippi Supreme Court held that there were constitutional problems where a confidential informant that was previously unknown by police provided testimony that was wholly uncorroborated. State v. Woods, 866 So.2d at 426(¶ 14). There, the supreme court affirmed the decision of a circuit court judge to grant a criminal defendant's motion to suppress evidence. The evidence was a large ziplock bag of crack cocaine. The evidence was suppressed by the circuit court because the:
search warrant was issued solely based upon two telephonic conversations a metro narcotics agent had with a confidential informant who had never previously supplied any information to any law enforcement agencies. That the agent failed to conduct an in person interview with the informant, or to otherwise make attempts to test her veracity or credibility other than conducting an NCC background check. Further, the agent failed to corroborate any of the information supplied by the informant through any independent investigatory means.
Id. at 425(¶ 7).
¶ 13. This Court has distinguished Woods. See Gray v. State, 926 So.2d 961 (Miss.Ct.App.2006). In Gray, this Court distinguished Woods stating that Gray involved a situation where an informant had previously been used and information was corroborated by police by conducting surveillance on defendant's house. Gray, 926 So.2d at 975(¶ 44). Our supreme court has stated that the "rationale for the victim or eyewitness exception is that the statements of such eyewitnesses are based on their own observation and thus are not likely to reflect mere `idle rumor or irresponsible conjecture.'" Walker v. State, 473 So.2d 435, 438-39 (Miss.1985) (citation omitted).
¶ 14. In the present case, The Underlying Facts and Circumstances portion of the affidavit stated in part:
This affidavit is based upon my personal knowledge, and information related to me by other law Enforcement officers and by confidential and reliable sources.
. . . .
Agents with the Mississippi Bureau of Narcotics, and North Mississippi Narcotics Unit have had an investigation open since January 2004 on a major Methamphetamine Distribution in North Mississippi. Agents [have] coded and used several different confidential informants and verified their information through arrest, drug seizures, and other investigative techniques.
Billy Bailey has been identified as one of the major violators and is receiving *977 approximately two to three ounces of Methamphetamine per week for distribution and personal use.
A Methamphetamine violator, Melissa [McRee], was seen leaving Billy Bailey's residence . . . by Agent Keith Roberson. Deputy Michael Fowler made a traffic stop on . . . Ms. [McRee] [and was given] permission to search the car and he recovered a methamphetamine straight shooter in Ms. [McRee's] purse. Ms. [McRee] was arrested and transported to the County Jail in Okolona. At that time Agent Keith Roberson recovered approximately one (1) gram (in two bags) of alleged Methamphetamine off her person. After being advised of her Miranda Rights Ms. Mcree gave verbal and a written statement to Agent Keith Roberson. Melissa [McRee] stated that she bought the two bags of Methamphetamine from Daphne Fowler for $70.00 while located at Billy Bailey's residence right before she got stopped. . . .
The information provided to law enforcement by confidential informants caused police to conduct surveillance on Bailey's residence. That surveillance resulted in direct observation by police that activity consistent with drug trafficking was taking place at that location. The sworn statement submitted to Judge Posey, while not abundant with detail, indicated that information received by the confidential informants concerning Bailey was consistent among multiple sources, and that police verified that activity consistent with drug trafficking was taking place at Bailey's residence. In addition, a recent occupant of Bailey's residence was placed in custody and confirmed that she had in fact purchased methamphetamine at Bailey's residence. McRee was a participant and eyewitness to the drug activity taking place at Bailey's residence.
¶ 15. Bailey likens McRee's statement to that of the statement given in Woods. However, McRee's statement was not the only information submitted to Judge Posey in support of the search warrant. Taken together, police received information incriminating Bailey from multiple sources. Police then conducted surveillance on Bailey's residence and confirmed that activity was taking place consistent with drug trafficking. All of this activity led to the arrest of McRee, a person who had personally conducted a drug transaction at Bailey's residence. The information obtained by confidential informants was corroborated by independent means of police investigation. McRee's statement was not the sole basis for the search warrant. The totality of circumstances presented a substantial basis for Judge Posey to conclude that probable cause existed for the proper issuance of the search warrant. The trial judge did not commit error in denying Bailey's motion to suppress the evidence presented against him at trial.
2. Sufficiency and Weight of Evidence
¶ 16. Bailey argues that the State presented legally insufficient evidence to convict him. He also argues that his conviction is against the weight of the evidence. Bailey relies on case law to support his argument. Roberson v. State, 595 So.2d 1310, 1319 (Miss.1992) (constructive possession requires evidence that the contraband was under the dominion and control of the defendant); Campbell v. State, 566 So.2d 475, 476 (Miss.1990) (reversing a conviction where defendant was transported in a police car with another person under arrest, cocaine was deposited in the back seat, but no proof was advanced to connect the defendant to the cocaine); Powell v. State, 355 So.2d 1378, 1379 (Miss.1978) (acquittal is proper where no competent evidence is advanced connecting defendant with contraband). Bailey *978 concludes that there was no competent evidence advanced to connect him to the methamphetamine found in his apartment.
¶ 17. Bailey was not in his residence when the police executed the search warrant. Fowler was in the apartment when the police initially entered. Bailey later pulled up to his apartment as the police were executing the search. Items recovered from a search of Bailey's residence and vehicle include a total of 18.03 grams of methamphetamine, notebooks containing initials and dollar amounts, scales, plastic bags, and other drug paraphernalia.
¶ 18. At trial, Fowler testified against Bailey. In exchange for her cooperation, the charges against her were not adjudicated. The jury was informed of this fact at the beginning of her testimony. Fowler testified that she began purchasing crystal methamphetamine from Bailey at his residence in February or March 2004. Fowler and Bailey then became involved in a personal relationship. Fowler spent the majority of her time at Bailey's residence and had picked up drugs with him on occasion from Pontotoc County. She also sold drugs for Bailey on occasion. She testified about Bailey's drug activity and the lists Bailey maintained to track which purchasers still owed money from past drug transactions.
¶ 19. Fowler testified concerning Bailey's ownership of the drugs recovered when the police executed the search warrant on his residence and vehicle. Fowler testified that Bailey stored drugs in a hollowed out battery in the bed of his truck. Fowler testified that she had picked up an ounce of methamphetamine on the day of the drug bust in June 2004. Some of the methamphetamine was sold that same day, including some to McRee, and the remainder was recovered by police.
¶ 20. The trial court denied Bailey's motion for a directed verdict. We review the issue of whether the evidence was legally sufficient by viewing the evidence in a light most favorable to the State. Shaw v. State, 915 So.2d 442, 448(¶ 24) (Miss.2005). Evidence is legally insufficient to convict a criminal defendant if a jury could not have found an accused guilty even with all the reasonable inferences in favor of guilt that could have been derived from the evidence. Id.
¶ 21. Bailey argues that Fowler's testimony was insufficient to connect him with the methamphetamine. He points to Fowler's testimony being solicited in exchange for a non-adjudication of her pending charges. It is the responsibility of the jury to weigh the credibility of Fowler's testimony. Townsend v. State, 939 So.2d 796, 802(¶ 27) (Miss.2006). The burden on the State to produce legally sufficient evidence of Bailey's dominion and control over the methamphetamine was satisfied by Fowler's testimony.
¶ 22. As to the weight of the evidence, we view the evidence in the light most favorable to the verdict. Bush v. State, 895 So.2d 836, 844(¶ 18) (Miss.2005). In reviewing the evidence we sit as a limited thirteenth juror and will only disturb the verdict against Bailey if allowing it to stand would "sanction an unconscionable injustice." Id.
¶ 23. The evidence discussed above demonstrates that Bailey was running a full-fledged drug distribution operation. When viewing the evidence against Bailey in the light most favorable to the verdict we can only conclude that allowing his conviction to stand would not sanction an unconscionable injustice. The trial court committed no error in overruling the motion for a new trial.
¶ 24. THE JUDGMENT OF THE CHICKASAW COUNTY CIRCUIT COURT OF CONVICTION OF POSSESSION *979 OF METHAMPHETAMINE AND SENTENCE OF TWENTY-FOUR YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, PAY A $10,000 FINE, AND $100 TO THE CRIME VICTIM'S COMPENSATION FUND, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
KING, C.J., LEE AND MYERS, P.JJ., IRVING, CHANDLER, GRIFFIS, BARNES, ISHEE AND ROBERTS, JJ., CONCUR.