920 So.2d 375 (2006)
STATE of Louisiana, Appellee
v.
Carroll Potts GOINS a/k/a Carol Goins, Appellant.
No. 40,364-KA.
Court of Appeal of Louisiana, Second Circuit.
January 25, 2006.
*377 Sherry Watters, New Orleans, Paula Corley Marx, Lafayette, for Appellant.
Jerry L. Jones, District Attorney, John M. Ruddick, Assistant District Attorney, for Appellee.
*378 Before WILLIAMS, GASKINS and MOORE, JJ.
WILLIAMS, Judge.
The defendant, Carroll Potts Goins, was charged by grand jury indictment with second degree murder, a violation of LSA-R.S. 14:30.1. Pursuant to a plea agreement, defendant pled guilty to the reduced charge of manslaughter, a violation of LSA-R.S. 14:31. The district court sentenced defendant to serve 30 years at hard labor without accrual of good time credit and denied her motion for reconsideration of sentence. Defendant appeals her conviction and sentence. We affirm.

FACTS
On February 26, 2000, the body of the victim, Tonja Rigby, was found behind a trailer park in West Monroe, Ouachita Parish. The victim had been stabbed to death. Police followed a blood trail from the body to a trailer located in the park and saw blood on the door. Along the pathway, they found a knife with a four-inch blade. A deputy knocked on the door of the trailer, but no one responded. Believing that someone could be injured inside the trailer, the deputy entered and found blood on the carpet. He found the defendant in the bathroom, and she consented to a search of the trailer. Money with blood stains was seized from between the mattresses in the bedroom, and the police also found a black shirt stained with blood and dirt. The defendant stated that she and the victim met while incarcerated at the Richland Parish Correctional Center and that they had worked together at the time of the crime. The defendant's brother-in-law identified the knife found as one that he had given to defendant.
A neighbor told police that at approximately 9:30 or 10:00 p.m. on the night of the murder, he had seen a woman wearing a black shirt walking from the trail where the body was found toward the trailer park and that the same woman returned shortly thereafter with a flashlight. The witness did not know the woman's name, but said she had recently moved into the trailer park. The defendant told police that she had been living in the trailer park "for approximately one or two weeks." Another resident of the trailer park stated that between 9:00 and 10:00 p.m. that evening she heard two women arguing near the defendant's trailer and heard a "frightening" scream. Defendant was arrested and charged with second degree murder.
Pursuant to a plea agreement, defendant pled guilty to the reduced charge of manslaughter. The district court sentenced defendant to serve 30 years at hard labor and denied eligibility for diminution of sentence for good behavior under LSA-C.Cr.P. art. 890.1(B), noting that manslaughter is a crime of violence as defined in LSA-R.S. 14:2(13).

DISCUSSION
The defendant contends the district court erred in ignoring her pro se motion to quash raised in her letter written to the court. Defendant argues that her right to a speedy trial was denied when the state failed to bring her to trial by June 6, 2004.
The right to a speedy trial is fundamental and is guaranteed to the accused. La. Const. art. I, § 16; U.S. Const. Sixth and Fourteenth Amendments; Barker v. Wingo, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). The right attaches when an individual becomes an accused, either by formal indictment or bill of information or arrest and actual restraint. State v. Bodley, 394 So.2d 584 (La.1981). Louisiana has adopted the balancing test of Barker v. Wingo, supra, in which the conduct of both the prosecution and the defendant are weighed. The *379 four factors to be considered are: 1) length of delay; 2) reason for the delay; 3) the defendant's assertion of his right, and 4) prejudice to the defendant, such as the possible impairment of the presentation of the accused's defense. Barker v. Wingo, supra; State v. James, 394 So.2d 1197 (La.1981); State v. Johnston, 480 So.2d 823 (La.App. 2d Cir.1985).
For the non-capital felony with which the defendant was charged in the present case, the state was given two years from the institution of prosecution to commence trial. LSA-C.Cr.P. art. 578. The circumstances for interruption of the time limitation are provided in LSA-C.Cr.P. art. 579, which states in pertinent part:
A. The period of limitation established by Article 578 shall be interrupted if:
* * *
(2) the defendant cannot be tried because of insanity or because his presence for trial cannot be obtained by legal process, or for any other cause beyond the control of the state;
* * *
B. The periods of limitation established by Article 578 shall commence to run anew from the date the cause of interruption no longer exists.
A motion to quash is the proper procedural vehicle for challenging an untimely commencement of trial. LSA-C.Cr.P. art. 532(7); LSA-C.Cr.P. art. 581; State v. Morris, 99-3235 (La.2/18/00), 755 So.2d 205, citing State v. Rome, 93-1221 (La.1/14/94), 630 So.2d 1284. The responsibility of proving timely prosecution rests with the state. State v. Harris, 29,574 (La.App.2d Cir.5/7/97), 694 So.2d 626. Article 581 provides that unless a motion to quash is made prior to trial, the right of dismissal is waived.
Here, in March 2000, defendant was charged with second degree murder and pled not guilty. On December 4, 2000, the defendant withdrew that plea and entered a dual plea of not guilty and not guilty by reason of insanity. The court appointed a three-member sanity commission which found that the defendant lacked the mental capacity to understand the proceedings against her or to assist in her defense. In October 2001, the court ordered the defendant to be committed to the custody of the Department of Health and Hospitals (DHH), in the Eastern Louisiana Mental Health System, Forensic Division, and ordered DHH to advise the court once defendant was able to comprehend the proceedings against her.
On June 6, 2002, Dr. Marc Colon, a psychiatrist with DHH, issued a report to the court after examining defendant. Dr. Colon concluded that defendant did not show symptoms of acute mental illness and opined that defendant was able to understand the proceedings against her and to assist in her defense. Based on Dr. Colon's report, the state moved for a reevaluation of defendant's capacity and the district court issued an order that the same three-member sanity commission reexamine defendant and submit its report to the court by October 1, 2002.
On July 7, 2003, the district court issued written reasons for judgment finding that defendant was competent to stand trial and ordering the proceedings to "promptly" resume. The court noted that reports had been received from two of the three commission members, and that the state and defense counsel had agreed that the court would make a decision based on these reports in lieu of a contradictory hearing.
The court minutes show that on five occasions between September 22, 2003 and January 26, 2004, including three times *380 when defendant was not present in court, either a motion hearing or the trial was reset to a later date. In a letter dated March 21, 2004, defendant wrote to the court to express dissatisfaction with her counsel's lack of communication and she requested that new counsel be assigned. In the third paragraph of the letter, defendant stated that her constitutional right to a speedy trial "obviously" had been violated. The court sent a copy of the letter to the state and defense counsel requesting information about the status of the case. On December 9, 2004, after a number of additional continuances, defendant pled guilty to manslaughter.
Defendant argues that the court should have treated her letter as a motion to quash the indictment because she complained about the violation of her right to speedy trial. Defendant contends the cause of interruption no longer existed as of June 6, 2002, the date of Dr. Colon's report or at the latest, the prescriptive period resumed on October 2, 2002, the date originally set for resolution of her competency.
Contrary to defendant's contention that all of the information used to find her competent was available by June 2002, the court needed to obtain the sanity commission's report to make a finding of defendant's capacity to understand the proceedings. Two of the commissioners' examinations, which the court considered in determining defendant's competency to stand trial, were not conducted until September 2002. Although the commission reports were originally due in October 2002, the court apparently waited for the third member's report before making a finding. The reason for the delay does not appear in the record and there was no showing that the court's receipt of the sanity commission reports was within the state's control.
The record shows that on July 7, 2003, the district court found that defendant was competent to stand trial and ordered the proceedings to resume. Thus, the cause for interruption, defendant's incompetency to stand trial, no longer existed as of that date and the state was required to commence trial within two years, or 24 months, from July 7, 2003. The defendant's guilty plea was entered in December 2004, within 18 months of the date on which the cause of interruption was found to no longer exist. Consequently, defendant's plea was made within the Article 579(B) period of limitation.
Furthermore, the letter which the defendant argues was a pro se motion to quash does not request dismissal of the charges. Instead, she simply asks for "someone competent to represent" her. Defendant cites the reasons for the delay of her trial as being "several court dates rescheduled" without her knowledge because her attorney failed to contact her. The letter appears to be a request for change of appointed counsel, and cannot reasonably be construed as a motion to quash. Pursuant to Article 581, because defendant failed to file a motion to quash prior to trial, any right of dismissal is waived. The assignment of error lacks merit.

Sentencing
The defendant contends the district court erred in imposing an excessive sentence and in denying eligibility for diminution of sentence for good behavior ("good time"). Defendant argues that the denial of good time eligibility should be vacated because the court failed to advise her of the provisions of Article 890.1 at the time of her guilty plea.
Whoever commits manslaughter shall be imprisoned at hard labor for not more than *381 forty years. LSA-R.S. 14:31. Pursuant to Article 890.1, if a person is convicted of or pleads guilty to a crime of violence as enumerated in LSA-R.S. 14:2(13), which includes manslaughter, and is sentenced to imprisonment for a number of years, the sentencing court may deny or place conditions on eligibility for diminution of sentence for good behavior unless diminution of sentence is prohibited by LSA-R.S. 15:571.3(C) or (D). Section 571.3(C) provides that diminution of sentence shall not be allowed an inmate who has been convicted of manslaughter.
In the present case, the applicable statutory provisions show that contrary to defendant's contention, the district court did not have discretion regarding denial of defendant's eligibility for diminution of sentence for good behavior. Pursuant to Section 571.3(C), defendant would not be allowed such diminution as a consequence of her manslaughter conviction.
The defendant also contends the district court failed to adequately inform her of the penalties provided by law for the conviction of manslaughter. LSA-C.Cr.P. art. 556.1 requires the court, prior to accepting a guilty plea, to personally inform defendant of, inter alia, the nature of the charge to which the plea is offered and the maximum penalty provided by law. However, any variance from the procedure required by Article 556.1 that does not affect substantial rights of the accused shall not invalidate the plea. LSA-C.Cr.P. art. 556.1(E). Thus, the court's failure to advise defendant as provided in Article 556.1 is subject to analysis under the harmless error rule. State v. Guzman, 99-1528 (La.5/16/00), 769 So.2d 1158; State v. Snow, 36,826 (La.App.2d Cir.3/5/03), 839 So.2d 988.
In the present case, the district court, before accepting the guilty plea, advised defendant of the nature of the charge and informed her that manslaughter is a crime of violence with a maximum sentence of 40 years. Defendant stated that she had spoken with her counsel about the consequences of the guilty plea and that she understood the sentencing range. Thus, the record demonstrates that the district court adequately complied with the requirements of Article 556.1. Even assuming for the purpose of argument that the court erred in advising defendant, any such error was harmless since defendant agreed to the plea with knowledge that the maximum sentence was possible and the alternative charge was second degree murder with exposure to a life sentence.
The defendant also contends the sentence is excessive considering the circumstances of the case and her background. A trial court has broad discretion to sentence within the statutory limits. Absent a showing of manifest abuse of that discretion, an appellate court will not set aside a sentence as excessive. State v. Lingefelt, 38,038 (La.App.2d Cir.1/28/04), 865 So.2d 280, writ denied, 04-0597 (La.9/24/04), 882 So.2d 1165.
The test imposed by the reviewing court in determining the excessiveness of a sentence is two-pronged. First, the record must show that the trial court took cognizance of the criteria set forth in LSA-C.Cr.P. art. 894.1. The articulation of the factual basis for a sentence is the goal of Article 894.1, not rigid or mechanical compliance with its provisions. State v. Lanclos, 419 So.2d 475 (La.1982). The important elements which should be considered are the defendant's personal history (age, family ties, marital status, health, employment record), prior criminal record, seriousness of offense and the likelihood of rehabilitation. State v. Jones, 398 So.2d 1049 (La.1981); State v. Bradford, 29,519 (La.App.2d Cir.4/2/97), *382 691 So.2d 864. There is no requirement that specific matters be given any particular weight at sentencing. State v. Jones, 33,111 (La.App.2d Cir.3/1/00), 754 So.2d 392, writ denied, 00-1467 (La.2/2/01), 783 So.2d 385.
Whether the sentence imposed is too severe depends on the circumstances of the case and the background of the defendant. A sentence violates La. Const. art. I, § 20 if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering. State v. Dorthey, 623 So.2d 1276 (La.1993); State v. Bonanno, 384 So.2d 355 (La.1980). A sentence is considered grossly disproportionate if, when the crime and punishment are viewed in light of the harm done to society, it shocks the sense of justice. State v. Hogan, 480 So.2d 288 (La.1985); State v. Bradford, supra.
Prior to imposing sentence, the district court reviewed a pre-sentence investigation report and considered the facts of the case. The court was aware of the defendant's age, employment and history of mental health problems. As mitigating factors, the court noted that defendant did not have any prior felony convictions and had expressed remorse. However, the court found that defendant's use of a dangerous weapon was an aggravating factor. In addition, the court noted the extensive wounds inflicted upon the victim, who suffered a lethal stab wound on the right side of the chest at the base of her neck, and stab wounds in the chest near the left shoulder, and in the back that exited through the chest.
In considering defendant's history of alcohol abuse and mental illness, the court pointed out that at various times she had failed to follow through with recommendations for inpatient substance abuse treatment and counseling. The record supports the district court's findings that defendant was in need of correctional treatment or a custodial environment and that a lesser sentence would deprecate the seriousness of the crime. The court provided adequate reasons for imposition of the sentence.
The sentence imposed is neither grossly disproportionate to the seriousness of the offense committed nor shocking to the sense of justice. There is no showing that the district court abused its discretion in sentencing this defendant. Thus, we cannot say that the sentence is constitutionally excessive. The assignment of error lacks merit.

CONCLUSION
For the foregoing reasons, the defendant's conviction and sentence are affirmed.
AFFIRMED.