DREW, J.
|! Jacob Johnston was indicted for one count of aggravated rape. La. R.S. 14:42. He pled guilty to the responsive crime of attempted aggravated rape. La.; R.S. 14:27; 14:42. He was sentenced to 50 years at hard labor, to be served concurrently with any other sentence.
Through counsel, defendant appeals the excessiveness of his sentence.
The defendant has also filed a pro se brief, alleging excessiveness and that his guilty plea was not knowingly and intelligently made.
Noting three errors patent, we affirm in all respects.
FACTS .
On January 27, 2014, Rev. Barry Brister contacted the Sterlington Police Department and reported that he was en route-to the station with Jacob Johnston, then 17 years old, who had confessed to sexually assaulting E.H. (d.o.b. 7/1/05), ■ an ■ eight-year-old girl. Rev. Brister advised that E.H.’s parents had contacted him after E.H. had asked them if all boys’ penises were the same. When ”E.H.’s parents asked her about the strangq question, she told them that the defendant took her pants off, made her sit on his lap, and “bounced up and down.” Brister told police that the defendant had admitted doing this.
After being Mirandized, the defendant said:
• E.H.’s father was his former teacher, and he had moved in .with the family;
• the day before, E.H.’s parents left their two children with him for, the day;
• he pulled E.H.’s pants down and had her bounce on his lap;
la* he was unable to penetrate E.H. that way;
• he removed the rest of her clothing and again tried to penetrate her vagina; .
• he could get his penis in only about one-half inch;
• he did not push harder because he did not want to hurt her;
• the entire incident lasted about five minutes;
• after E.H. got dressed, he took her and her brother to a park to play; and
• though accused of molesting children before, he had never been charged and he denied committing those other offenses. .
He was then placed under arrest.
Two days after the crime, E.H. underwent a medical- examination at the Children’s Advocacy Center, where she was *155 also interviewed. Evidence of sexual molestation was found.
Four days after the crime, the defendant was interviewed by Meredith Brooks of Child Protective Services, who later advised that the defendant made the stunning statement that he “knew what he was doing and knew it was wrong” and “he has a problem and if given the chance he would do it again.”

Guilty Plea Colloquy

The trial court conducted a comprehensive guilty plea colloquy, discussing the implications of pleading guilty and inquiring into the defendant’s understanding of the implications of waiving: his right against self-incrimination, trial by judge or jury, any defense on the merits, his right to confront, and cross-examine witnesses, his presumption of innocence, his 1 ¡¡right to remain silent, his right to compulsory process of the court, and any right to appeal, other than attacks on the guilty plea and sentence.
The trial court also had an interesting conversation with the defendant.[1]
The trial court asked the state to describe what it was prepared to show if the case were to go'to trial. The state described its cáse as follows:
We’d be prepared to show that on the 26th of ... January of this year at approximately 3 o’clock at the residence of the place where the[1] defendant was staying, he had sexual intercourse with a— an eight year old whose name we will not mention^ and. that he inserted his penis into her and was able to get it in about, half an inch but wouldn’t .go ... no further. And that’s the allegation for this charge.
The defendant agreed with the .state’s recitation of the facts and indicated that he did not wish to make any changes. The trial court accepted the plea of guilty and ordered a presentence investigation report (“PSI”).

Sentencing

The defendant was sentenced to 50 years-at hard labor, concurrent with any sentence imposed prior to the imposition of the present sentence. ■
The trial court found the following mitigating factors:
• The defendant admitted to the crime;
14» The victim’s family viewed him as a member of their family;
• The defendant did not' have a “meaningful” criminal record;
• The defendant had been diagnosed with ADHD; and
• The victim’s father was the defendant’s 8th grade teacher.
The trial court found over 20 aggravating factors.[2]

*156
Motion to Reconsider Sentence, Hearing and Ruling

The defendant filed a motion to reconsider sentence, arguing that the trial court failed to adequately consider his young age and other mitigating factors during sentencing. The trial judge ordered a hearing on the motion.
| sPrior to the hearing, the state filed an opposition to the defendant’s motion to reconsider sentence, asserting that the 50-year sentence was valid based on the underlying facts of the crime, the trial court’s enumerated aggravating factors, and the fact that the defendant admitted that, if he had the chance, he would do it again.
The defendant argued that, because of his age, there was a higher.likelihood of rehabilitation. The defendant also argued that the fact that he was sexually assaulted when he was nine years old should have been considered a mitigating factor. The defendant argued that it was not uncommon for a 17-year-old not to have a “meaningful employment history,” implying that the trial court should not have considered his lack of employment as an aggravating factor. He produced letters from friends and family in support of his character.
At the hearing, he attempted to reference a police report, which allegedly supports the contention that the defendant was sexually assaulted when he was nine. The state objected, and the trial court sustained the objection.
The trial court eloquently refuted defendant’s argument that the trial court did not adequately consider his youth at sentencing.[3]
*157 UThe trial judge also clearly responded to defendant’s argument that the trial court did not give proper consideration to his lack of criminal history.[4]
DISCUSSION
Counseled Assignment of Error; The maximum sentence was excessive.[5]
Appellant’s counsel argues that this 50-year sentence amounts to excessive punishment and the trial court erred in imposing such a harsh sentence because:
• it failed to adequately consider this particular defendant at sentencing;
• it improperly considered each step in the commission of the crime against E.-H. as an aggravating factor;
• the unsubstantiated allegations of prior incidents of molestation should not have been considered;
17* there was not adequate consideration of such mitigating factors as the defendant’s young age and the fact that he had been molested as a child;
• a 50-year sentence is essentially a life sentence;
• the maximum sentence for a crime is reserved for the most egregious crimes, and the instant crime was “far from the most heinous”;
• the sentence was not particularized to this defendant or this crime;[6] and
• the trial court’s statement that it had “heard music” was improper.
In response, the state argues that the defendant’s particularized conduct warranted a 50-year sentence, and this sentence is supported by these factors:
• the aggravating factors and seriousness of the offense;
• the defendant benefitted from pleading guilty to a responsive charge;
• the trial court has extensive experience;
• the court was cognizant of all circumstances; and
• the. trial court’s thorough discussion of the La. C. Cr. P. art. 894.1 factors, and the sordid, horrific facts of the case.
Our law is well settled as to the *158 review of excessiveness claims.[7]
IsThe elements of .and penalty for this crime charged could not be clearer.[8]
*159 IsBased on La. R.S. 14:27 and La. R.S. 14:42(A)(4), the range of this sentence is 10 to 50 years at hard labor without benefit of parole, probation, or suspension of sentence. The defendant got it all, but this sentence is lawful.
The trial court-conducted an extremely thorough analysis of the sentencing factors he considered. The record indicates that the trial court considered the specific, details of the crime, the defendant’s conduct, his criminal history, and his social background as described in the PSI. This is more than adequate compliance with La. C. Cr. P. art. 894.1.[9]
There is an adequate factual basis for the sentence for this truly heinous crime. The defendant avoided a life sentence. The offense of conviction does not adequately describe his egregious actions.
Recent convictions for attempted aggravated rape reveal that similarly situated defendants have received similar sentences.[10]
| ^Considering the totality of the record, the 50-year maximum sentence, while most certainly harsh, is not constitutionally excessive. Based on review of the facts of this case, as .well as the trial court’s thoughtful and thorough explanation for the sentence imposed, the trial court did not abuse its sentencing discretion.

Pro Se Assignment of Error Number One

The defendant’s guilty plea was constitutionally infirm because it was not knowingly and intelligently made.

Pro Se Assignment of Error Number Two

The defendant’s guilty plea was constitutionally infirm' because the maximum 50-year sentence imposed did not provide him with a substantial break in sentence exposure.
The defendant’s first and second pro se assignments of error both contest the validity of his guilty plea. The defendant argues:
• the trial court’s explanation of his potential sentencing exposure, should he *160 choose to go to trial, was “inherently coercive”;[11]
• he did not substantially benefit from pleading guilty to the responsive charge of attempted aggravated rape;
• if he had been convicted of aggravated rape and sentenced to life, he would be eligible for parole when he turned 47;
• based on his guilty plea to attempted aggravated rape, he will not be eligible for parole until he is 59 years old; and
• parole eligibility is a meaningful consideration.
|nOur law on the validity of guilty pleas is well settled.[12]

Sentencing Disclosure Errors During Guilty Plea Colloquy

The supreme court has held that even though “advice with respect to the defendant’s sentencing exposure may facilitate the taking of a voluntary guilty plea, [it] *161 does not form part- of the core Boykin requirements for the |¶ gentry of a presumptively valid guilty plea.” State v. Anderson, 1998-2977 (La.3/19/99), 732 So.2d 517; State v. Burford, 39,610 (La.App.2d Cir.5/11/05), 902 So.2d 1190, 1198, writ denied, 2005-1573 (La.1/27/06), 922 So.2d 545.
In State v. Edwards, 48,673 (La.App.2d Cir.1/15/14), 132 So.3d 448, prior to the supreme court’s ruling in Miller v. Alabama, — U.S. -, 132 S.Ct. 2455, 183 L.Ed.2d 407 (2012), Edwards, who was 15 years old at the time of the offense, pled guilty to armed robbery with a firearm in exchange for the state’s dismissal of the first degree murder charge against him. The trial court accepted Edwards’ guilty plea and subsequently sentenced him to 20 years at hard labor without benefits. On appeal, Edwards argued that the supreme court’s decision in Miller “caused the plea bargaining process ... to be unreasonable and/or subject to scrutiny” because he could not have been exposed to' the sentence of life without parole, even if he had been convicted of first degree murder at trial. This Court held that the fact that a 15-year-old was exposed to a potential mandatory life sentence on a charge of first degree murder at the time he en-' gaged in plea negotiations did not taint the plea bargaining process when he agreed to plead guilty to armed robbery with a firearm and therefore reduce his sentencing exposure. This Court reasoned that Miller “does not categorically prohibit sentences of life imprisonment without the benefits of parole for juvenile offenders[.] With proper consideration by a sentencing court, had the defendant rejected the plea offer and been convicted at trial, he could have been sentenced to life.” | ^Furthermore, Edwards “pled guilty to armed robbery with a firearm, not to an offense that had a mandatory penalty of life without parole.” Id.
The transcript of the guilty plea hearing confirms that the trial court conducted.a comprehensive colloquy, and met and exceeded the requirements of Boykin v. Alabama, supra. The defendant stated that he understood everything the trial judge told him, that he understood the implications of his guilty plea, and that, based on those implications, he still wished to enter a plea of guilty.
Defendant incorrectly claims the trial court’s notice that aggravated rape mandates a life sentence was coercive. The context of the statement obviates any potential error in describing'his sentencing exposure. The trial court owed a duty to tell him the exact ramifications of being found guilty of aggravated rape as opposed to the 50-year cap for attempted aggravated rape, to which he pled.
To the extent that the defendant argues that, based on his age, he could not have been sentenced to life imprisonment without benefits, this is refuted by our holding in State v. Edwards, supra.
Based on a review of the guilty plea colloquy and the record as whole, the defendant’s plea was knowingly and voluntarily made.
Errors Patent
1, Sex offender notiftcation per La. R.S. 14:541, et séq.
Attempted aggravated rape is a sex offense Under La. R.S. 15:541. La. R.S. 15:542 provides registration requirements for sex offenders. La. R.S. 15:543 requires that the trial court notify a defendant charged with a |14sex offense in writing of the registration requirements, and that such notice be included on any guilty plea forms and judgment and sentence forms provided to defendant, and that an *162 entry be made in the court minutes confirming the written notification.
The record does not indicate compliance with the above.
Therefore, remand is required for the purpose of providing the appropriate written notice to the defendant of the sex offender registration requirements. State v. Williams, 49,249 (La.App.2d Cir.10/1/14), 149 So.3d 462, writ denied, 2014-2130 (La.5/22/15), 173 So.3d 1167.
2. With or without benefits?
 The sentencing range for the crime of attempted aggravated rape is 10-50 years at hard labor, without benefit of parole, probation, or suspension of sentence. La. - R.S. 14:27(D)(l)(a); 14:42(A)(4). The trial court failed to state that the sentence was to be served without benefits, as required by law.[13].
When a trial court fails to order the statutorily mandated'service of sentence without benefits,-the sentence must comply with law. See State v. Williams, 2000-1725 (La.11/28/01), 800 So.2d 790. We order that | ^defendant’s 50-year sentence be served at hard labor, without all benefits, and we order that the trial court minutes be amended to reflect this.
3. Post-conviction time delays of La. C. Cr. P. art. 930.8.
The trial court did not technically advise the defendant properly as to the time period within which to apply for post-conviction relief under La. C. Cr. P. art. 930.8, as it left out a reference to the finality of the sentence.
 Though La. C. Cr. P, art, 930.8(C) requires the trial court to inform the defendant of the limitation period for filing an application for post-conviction relief, this is supplicatory language.[14] The failure to properly advise a defendant is not grounds to vacate or remand.[15] We hereby notify' the defendant that he' has . two years from the date his conviction and sentence becomes'final under La. C. Cr. P. arts. 914 or 922 to file any application for post-conviction relief.[16]
DECREE
The defendant’s conviction and sentence are AFFIRMED.

. COURT: Do you understand you are pleading guilty to what is known as attempted aggravated rape? Do you understand on the principal charge on a case like this or offense like this it’s called aggravated rape? Do you understand the law'says, I believe, whoever commits the crime of aggravated rape shall be punished by life imprisonment at hard labor without benefit of parole, probation or suspension of sentence, However, because this is what we call an attempted aggravated rape, the maximum penalty you will be facing on this _would be 50 years and a minimum of 10. Do you understand that?
Defendant: Yes, sir.
COURT: Knowing that to be the case you still wish to plead guilty?
Defendant: Yes, sir.
COURT: You still wish to go forward?
Defendant: Yes, sir.

. Aggravating factors:
• the victim was eight years old;
• this abuse led the child to ask about penises, an inappropriate- inquiry for a young girl;
• her statement to her parents that the defendant’s penis was bigger than her- brothers;
*156 • the defendant made the victim take off her pants and sit on his lap;
• the defendant had the victim "bounce up and down” on his lap;
• he agreed to a position of trust in watching the children while their parents were away;
• he showed the victim his penis;
• his attempt being unfruitful, he had the child take off more clothing and tried again;
• after this try, the defendant laid the victim down and got on top of her;
• he is much bigger than the victim;
• he attempted to penetrate the victim again, and this time, he succeeded in doing so;
• he made her put her clothes back on by herself;
• after the rape, he made no "move toward admission”;
• he simply took the kids to the park to play;
• he had at least three instances of past accusations of similar behavior;
• the child said that he penetrated her genitalia;
• the child described "naked spanking";
• the child said that he touched her "private parts”;
• the defendant knew what he was doing was wrong, but he would do it again;
• the letter from the victim’s father, describing: the victim’s need for continuing counseling, her emergence of PTSD, and her fear of punishment by the defendant because she told her folks, and his request that the defendant be sentenced to the maximum penalty;
• the defendant has no meaningful employment history; and
• he showed no remorse for his actions.

. COURT: ... [0]ne of the primary points of your argument is age, 17. How do we respond to the court’s concern that age is more than a number and that age in this case is not 17? It’s eight.
DEFENSE COUNSEL: Correct.
[[Image here]]
COURT: But if the law-if the law says that a person standing in 17-year-old skin—
DEFENSE COUNSEL: Uh-huh (yes).
COURT: — is subject to the same possibilities as one standing in 70-year-old skin—
DEFENSE COUNSEL: Correct.
COURT: — what is the distinction that the court should rely on so as to not treat people similarly situated differently. If he’s subject to the same possibilities at the age of 17 as somebody at 70, again I say the operative question is not age 17. The operative age is eight. That’s the issue.

.COURT: While it may be true that he didn’t have any criminal history as us in the business — we in the business — how we look at it, that the child didn’t have any, I’ll just say impacts of criminal history either. Are we supposed to say you get the first bite free?
DEFENSE COUNSEL: No, Your Honor.
COURT: You get the first bite at a fifty percent discount?
DEFENSE COUNSEL: No, Your Honor.
COURT: What do we do?
[[Image here]]
COURT: ... I been here 19 years. Two times-two times since I been here when I got ready to sentence somebody I heard music in the air. Two times. The first time I sentenced somebody on second degree murder and this one. Where the music came and I heard it go pong (ph) is when I read in the PSI where he said this.
DEFENSE COUNSEL: Uh-huh (yes)
COURT: He said, "If I get a chance to do it again, I will.” Now I heard music there. And it wasn’t too much else to be said about that.

. This counseled assignment will be discussed conjointly with the defendant’s:
Pro Se Assignment of Error Number Three: The maximum 50-year sentence was disproportionate and unreasonably given to a single count indicted defendant; and
Pro Se Assignment of Error Number Four: The sentence is cruel and unusual punishment.

. Appellant compares these facts with State v. Greenwalt, 41,145 (La.App.2d Cir.8/23/06), 938 So.2d 1073. He also cites State v. Hough, 47,308 (La.App.2d Cir.8/1/12), 103 So.3d 477, writ denied, 2012-1936 (La.3/8/13), 109 So.3d 357; and State v. Boswell, 46,181 (La.App.2d Cir.4/13/11), 62 So.3d 874, writ denied, 2011—1246 (La.12/2/11), 76 So.3d 1174, to support his claim.

. The trial judge is given wide discretion in the imposition of sentences within the statutory limits, and, the sentence imposed by the court should not be set aside as excessive in the absence of a manifest abuse of that discretion, State v. Williams, 2003-3514 (La.12/13/04), 893 So.2d 7; State v. Pamilton, 43,112 (La.App.2d Cir.3/19/08), 979 So.2d 648, writ denied, 2008-1381 (La.2/13/09), 999 So.2d 1145, reh'g denied and opinion modified, 2010-0273 (La.2/4/11), 56 So.3d 986.
Appellate courts apply a two-pronged test when reviewing a sentence for excessiveness: (1) whether the trial court adequately considered the guidelines established in La. C. Cr. P. art. 894.1; and, (2) whether the sentence is constitutionally excessive. State v. Gardner, 46,688 (La.App.2d Cir. 11/2/11), 77 So.3d 1052.
A review of the sentencing guidelines under La. C. Cr, P. art. 894.1 does not require the trial court to list every mitigating or aggravating circumstance; the trial court need only articulate a factual basis for the sentence it imposes. State v. Cunningham, 46,664 (La.App.2d Cir. 11/2/11), 77 So.3d 477. Theim-portant elements which should be considered are the defendant's personal history, criminal record and the seriousness of the offense. However, the trial court is not required to give more weight to any element over another. State v. Jones, 398 So.2d 1049 (La.1981); State v. Modique, 50,413 (La.App.2d Cir. 1/27/16), 186 So.3d 283; State v. Moton, 46,607 (La.App.2d Cir.9/21/11), 73 So.3d 503, writ denied, 2011-2288 (La.3/30/12), 85 So.3d 113.
A sentence can be constitutionally excessive, even when it falls within statutory guidelines if (1) the punishment is so grossly disproportionate to the severity of the crime that, when viewed in light of the harm done to society, it shocks the sense of justice; or (2) it serves -no purpose other than to needlessly inflict pain and suffering. State v. Modique, supra (citing State v. Lobato, 603 So.2d 739 (La.1992)). See also, State v. Dorthey, 623 So.2d 1276 (La.1993).
. As a general rule, maximum sentences are appropriate in cases involving the most serious violation of the offense and the worst type of offender. State v. Jacobs, 41,663 (La.App.2d Cir. 12/13/06), 945 So.2d 897. In cases where a defendant has pled guilty to an offense which does not adequately describe his conduct, the general rule does not necessarily apply and the trial court has great discretion in imposing the maximum sentence for the pled offense. This is particularly true in cases where a significant reduction in potential exposure to confinement has been obtained through a plea bargain and/or the offense .involves violence upon a victim. State v. Black, 28,100 (La.App.2d Cir.2/28/96), 669 So.2d 667, writ denied, 96-0836 (La.9/20/96), 679 So.2d 430; State v. Germany, 43,239 (La.App.2d Cir.4/30/08), 981 So.2d 972.
For purposes of sentencing, a trial judge is not limited to considering only a defendant's prior convictions. State v. Bright, 39,003 (La.App.2d Cir.10/27/04), 886 So.2d 1183. The sources of information relied upon are varied and may include information not normally admissible at trial, such as hearsay, prior arrests without disposition and suspicions of criminal activity without actual proof-the defendant committed other offenses. State v. Platt, 43,708 (La.App.2d Cir.12/3/08), 998 So.2d 864, writ denied, 2009-0265 (La.11/6/09), 21 So.3d 305; State v. Harris, 39,975 (La.App.2d Cir.9/21/05), 911 So.2d 361.
The Louisiana jurisprudence follows the requirement of comparing the same offenses, not merely the same charges. State v. Foley, 456 So.2d 979 (La.1984); State v. Dunn, 30,-767 (La.App.2d Cir.6/24/98), 715 So.2d 641. However, in determining whether a defendant’s sentence is excessive, a reviewing court should compare the defendant’s punishment with the sentences imposed for similar crimes by the same court or other courts. State v. Telsee, 425 So.2d 1251 (La.1983); State v. Ferguson, 44,009 (La.App.2d Cir.2/25/09), 4 So.2d 315.

. La. R.S.' 14:42, Aggravated rape, states in pertinent part:
D. Whoever commits the crime of aggravated rape ...
(2) if the victim was under the age of thirteen years, as provided by Paragraph (A)(4) of this Section:
(b) [where] the district attorney does not seek a capital verdict, the offender shall be punished by life imprisonment at hard labor without benefit of parole, probation or suspension of sentence. * * * -
La. R.S. 14:27, Attempt, states in pertinent part:
*159 D. Whoever attempts to commit any crime shall be punished as follows:
(l)(a) If the offense so attempted is punishable by death or life imprisonment, he Shall be imprisoned at hard labor for not less than ten nor more than fifty years without benefit of parole, probation, or suspension of sentence. * ⅜ * ‘ ■

. While appellant argues that the trial court failed to consider his claim that he was a victim of sexual abuse when he was nine years old, appellant does not assert that the trial court erred in sustaining the state’s objection to the introduction of evidence to corroborate his mother’s claim that he had been a victim of abuse. This alleged information was discoverable, but not included in the PSI. See State v. Davis, 35,480 (La.App.2d Cir. 1/23/02), 806 So.2d 929, 932 (dismissing claim of excessive sentence based on defendant's argument that the trial judge did not consider defendant’s age during sentencing).

. State v. Boswell, 46,181 (La.App.2d Cir.4/13/11), 62 So.3d 874, writ denied, 2011-1246 (La.12/2/11), 76 So.3d 1174 (defendant, 37, had no significant criminal history, and pled guilty to the responsive charge of at- ■ tempted aggravated rape of a minor; 48-year sentence was not excessive); State v. Haynes, 44,868 (La.App.2d Cir.12/9/09), 26 So.3d 310 (defendant had no criminal history, and pled guilty to the responsive charge of attempted aggravated rape of a minor; 50-year sentence was hot excessive); State v. Hutson, 34,510 (La.App.2d Cir.5/9/01), 786 So.2d 226, writ denied, 2001-1997 (La.3/28/02), 812 So.2d 655 (defendant, 48, had no criminal history, and pled guilty to the responsive charge of two counts of attempted aggravated rape of a minor; 50-year sentence, served concurrently, was not excessive summarize); State v. McClelland, 03-498 (La.App. 5th Cir.10/15/03), 860 So.2d 31, writ denied, 2003-3372 (La.3/26/04), 871 So.2d 347 (defendant, 18, hád no significant criminal history, and was. convicted by a jury of the responsive crime.of attempted aggravated rape of a minor; 45-year sentence was not excessive).

. The defendant appears to incorrectly argue that the trial court’s explanation of the mandatory life sentence upon a conviction for aggravated rape could not apply to him Because he was under the age of 18 at the time of the crime.

. The validity of any guilty plea depends upon the circumstances of each case. State v. Filer, 00-0073 (La.6/30/00), 762 So.2d 1080.
. Under Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969), a guilty plea must be recorded and show that defendant was informed of and waived three specific federal constitutional rights: (1) the privilege against compulsory self-incrimination; (2) the right to trial by jury; and (3) the right to confront one’s accusers. State v. Guzman, 99-1753 (La.05/16/00), 769 So.2d 1158, 1163, n. 4, citing State ex rel. Jackson v. Henderson, 255 So.2d 85, 260 La. 90 (1971).
When the record .establishes that the defendant was informed of and waived these rights, then the burden shifts to the accused to prove that, despite this record, his guilty plea was involuntary. State v. McGuire, 50,074 (La.App.2d Cir.9/30/15), 179 So.3d 632, 633-34, citing State v. Martin, 48,045 (La.App.2d Cir.5/15/13), 115 So.3d 750.
La. C. Cr. P. art. 556.1 indicates that the trial court, prior to accepting a plea of guilty, should inform the defendant, inter alia, of the nature of the charge(s) to which the plea is offered and the minimum and maximum penalties provided by law. However, that article further provides that any variance from the specified procedure that does not affect substantial rights of the accused shall not invalidate the plea. La. C.- Cr. P. art. 556.1(E); State v. Honeycutt, 41,601 (La.App.2d Cir.02/28/07), 953 So.2d 914; State v. Goins, 40,364 (La.App.2d Cir.01/25/06), 920 So.2d 375, writ denied, 06-1097 (La.11/09/06), 941 So.2d 38.
Boykin does not set out a magic word formula that may serve as a technical trap for conscientious trial judges who conduct a thorough inquiry into the validity of the plea. State v. Price, 48,986 (La.App.2d Cir.5/15/14), 140 So.3d 1212, writ denied, 2014-1274 (La.2/6/15), 158 So.3d 814.
Violations of La. C. Cr. P. art. 556.1 that do not rise to the level of Boykin violations are subject to the harmless error analysis. The proper inquiry is whether the defendant’s knowledge and comprehension of the full and correct information would have likely affected his or her willingness to plead guilty. State v. Kennedy, 42,850 (La.App.2d Cir.1/9/08), 974 So.2d 203, 208 (internal citations omitted).
A defendant’s failure to make a formal motion to withdraw a guilty plea does not prohibit a constitutionally infirm guilty plea from being set aside either by means of appeal or post-conviction relief. State v. Dixon, 449 So.2d 463 (La.1984)
This Court, in State v. Martin, 48,045 (La.App.2d Cir.5/15/13), 115 So.3d 750, described the meaning and implications of a "constitutionally infirm” guilty plea as follows:
A plea is constitutionally infirm when the defendant is induced to plead guilty by a plea agreement or by what the defendant reasonably believes is a plea agreement and the terms of the agreement are not satisfied. Where a defendant's misunderstanding is not induced by or attributed to representations made by the district attorney or the trial court, there are no grounds for withdrawal of the plea. In the absence of fraud, intimidation, or incompetence of counsel, a guilty plea is not made less voluntary or less informed by the considered advice of counsel.

. La. R.S, 15:301.1, states in pertinent part:
A. When a criminal statute requires that all or a portion of a sentence imposed for a violation of that statute be served without benefit of probation, parole, or suspension of sentence, each sentence which is imposed under the provisions of that statute shall be deemed to contain the provisions relating to the service of that sentence without benefit of probation, parole, or suspension of sentence. The failure of a sentencing court to specifically state that all or a portion of the sentence is to be served without benefit of probation, parole, or suspension of sentence shall not in any way affect the statutory requirement that all or a portion of the sentence be served without benefit of probation, parole, or suspension of sentence.

. State ex rel Glover v. State, 93-2330 (La.9/5/95), 660 So.2d 1189, abrogated on other grounds in State ex rel. Olivieri v. State, 2000-0172 (La.2/21/01), 779 So.2d 735; State v. Hunter, 36,692 (La.App.2d Cir. 12/20/02), 834 So.2d 6.

. State v. Cooper, 31,118 (La.App.2d Cir.9/23/98), 718 So.2d 1063, writ denied, 99-0187 (La.5/14/99), 741 So.2d 663.

. State v. Parker, 49,009 (La.App.2d Cir.5/15/14), 141 So.3d 839.