Judgment rendered December 15, 2021.
Application for rehearing may be filed
within the delay allowed by Art. 922,
La. C. Cr. P.

No. 54,103-KA

**EN BANC**

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

STATE OF LOUISIANA                         Appellee

versus

TONYA AVANT SANDIFER                       Appellant

* * * * *

Appealed from the
Eighth Judicial District Court for the
Parish of Winn, Louisiana
Trial Court No. 43,909

Honorable Jacque D. Derr, Judge

* * * * *

LOUISIANA APPELLATE PROJECT          Counsel for Appellant
By: Peggy J. Sullivan

R. CHRISTOPHER NEVILS               Counsel for Appellee
District Attorney

COLE B. SMITH
Assistant District Attorney

* * * * *

Before MOORE, GARRETT, STONE, COX, STEPHENS,
THOMPSON, ROBINSON, and HUNTER, JJ.

HUNTER, J., concurs with written reasons.

**COX, J.**

Defendant, Tonya Avant Sandifer ("Sandifer"), was convicted of distribution of methamphetamine, a Schedule II CDS, in violation of La. R.S. 40:967(A) and attempted distribution of methamphetamine, in violation of La. R.S. 40:967(A) and La. R.S. 14:27. She was sentenced to 25 years and 15 years at hard labor, respectively, with each sentence to be served consecutively. This Court affirmed Sandifer's convictions, but vacated and remanded her sentences to the trial court for resentencing for failure to provide an adequate factual basis to support the consecutive sentences.

On remand, however, the trial court imposed the same consecutive sentences without providing an adequate factual basis. Sandifer now appeals both sentences and her conviction for attempted distribution under *Ramos v. Louisiana*, 140 S. Ct. 1390, 206 L. Ed. 2d 583 (2020). For the following reasons, Sandifer's conviction for attempted distribution of methamphetamine and sentences for both convictions are vacated and remanded for further proceedings.

## FACTS

The background in this matter was set forth in detail in this Court's earlier opinion in *State v. Sandifer*, 53,276 (La. App. 2 Cir. 1/15/20), 289 So. 3d 212 ("*Sandifer I*"):

> Tonya Avant Sandifer was charged by bill of information with distribution of methamphetamine, a Schedule II CDS, in violation of La. R.S. 40:967A, and attempted distribution of methamphetamine, a Schedule II CDS, in violation of La. R.S. 40:967A and 14:27. These offenses were committed on May 10 and 16, 2016.
>
> The Winn Parish Sheriff's Office and the Louisiana State Police Department ("LSP") were investigating drug crimes in Winn Parish. Raymond Durbin was employed by the police as a confidential informant ("CI") to confect a drug deal between

Sandifer and an undercover LSP officer, Sergeant William Moore. On May 10, 2016, Sgt. Moore was working undercover using the alias, "Luke," when he met Sandifer, Durbin[,] and Misty Holmes at Gum Springs Park in Winn Parish. Durbin introduced Sandifer to "Luke," and Sandifer entered the passenger's side of Luke's vehicle. Sandifer sold ["Luke"] one ounce of methamphetamine (approximately 28 grams) for $700. The methamphetamine from the purchase was transferred to the North Louisiana Crime Lab.

Sandifer and "Luke" exchanged cell phone numbers and texted one another over the next few days. Through a text message, "Luke" requested another drug buy in the amount of four ounces of methamphetamine. Sandifer checked with her supplier and informed the undercover agent that the price would be $2,450. He agreed to the price and the two agreed to meet at Gum Springs on May 16, 2016, to complete the transaction. Due to the risk associated with large drug deals, Officer Patrick Deshautelle, the LSP case agent in charge of the operation, decided to intercept the drugs before they were delivered to Sandifer. On May 16, 2016, Ramonta Jackson, Sandifer's alleged supplier, was apprehended by a state trooper while Jackson was en route to meet Sandifer. Some four ounces of a substance was recovered from Jackson's vehicle; it later tested positive for methamphetamine.

Luke (Sgt. Moore) and Sandifer met on May 16, 2016, as scheduled, but Sandifer informed him that her supplier had been stopped by a state trooper. Sandifer attempted to find a second supplier, but was unable to procure any drugs to sell to the agent. Three months later, Sandifer was arrested on August 10, 2016. At trial, Sandifer testified that Durbin was living with her and that it was his idea to sell drugs, and in fact it was Durbin who introduced her to the undercover officer she knew as Luke. The jury unanimously found Sandifer guilty of distribution of methamphetamine and, by an 11-1 vote, found her guilty of attempted distribution.

On February 19, 2019, Sandifer appeared for sentencing. The court stated that it had reviewed the sentencing guidelines of La. C. Cr. P. art. 894.1, and concluded that it should impose a sentence of imprisonment because any other sentence would not adequately reflect the seriousness of the offenses. The court stated that illegal drugs are the source of most of the evil that occurs in the world. It noted the destructive effect drugs have on individual lives and families, as drug use tears at the fabric of our society. The court also opined that distribution of drugs is a far more egregious offense than mere possession, and, in this case, the defendant was convicted of distribution and attempted distribution of large quantities of methamphetamine. Finding no mitigating factors in the case, the court concluded

that the facts of the case warrant substantial terms of imprisonment. Accordingly, the court sentenced Sandifer to 25 years at hard labor for the distribution conviction and 15 years at hard labor for the attempted distribution conviction. The court ordered that the sentences were to be served consecutively.

Sandifer filed a motion to reconsider [the] sentence[s] on grounds that the sentence[s] [were] excessive and not commensurate with the crimes for which the defendant was convicted. The trial court denied the motion, stating that the sentences were "correct."

In its January 15, 2020, opinion, this Court affirmed Sandifer's convictions, but vacated and remanded her sentences to the trial court for resentencing. In expounding on its reasons for remand, this Court concluded that the record failed to provide an adequate factual basis by which to support Sandifer's consecutive sentences. Specifically, this court noted that as a general proposition, concurrent sentences are largely appropriate when an offense arises from a single course of conduct or common scheme.

Although it was within the trial court's discretion to impose consecutive sentences, this Court highlighted that a judgment directing that sentences arising from a single course of conduct be served consecutively requires particular justification from the evidence or record. Moreover, because the record was devoid of any particular justification for the imposition of Sandifer's consecutive sentences, this Court found that concurrent sentences were appropriate since the offenses arose from the same course of conduct and since a near-maximum sentence was imposed on a first offender.

On remand, Sandifer was resentenced on October 12, 2020, with the trial court imposing the same consecutive sentences. According to the transcript of the sentencing hearing, the trial court largely reiterated its

3

previous reasons for the imposition of the sentences, finding, in part, that any other sentence would not adequately reflect the seriousness of the committed offenses and that there were no mitigating factors.

Sandifer now appeals, seeking reversal of her conviction for attempted distribution of methamphetamine pursuant to *Ramos, supra.* Sandifer further argues that her sentences are excessive and that the trial court failed to state adequate grounds for imposing the same consecutive sentences.

## DISCUSSION

*Ramos v. Louisiana*

First, Sandifer argues that her conviction for attempted distribution of methamphetamine is on direct review before this Court and subject to review under *Ramos*, *supra.* In particular, Sandifer notes that subsequent to the rendering of this Court's opinion in *Sandifer I*, which vacated her sentences, but prior to her resentencing on remand to the trial court, the United States Supreme Court issued its opinion in *Ramos*, *supra,* finding that nonunanimous verdicts in Louisiana were unconstitutional. Because her case was still on direct appeal, Sandifer contends that her case is still before this Court on direct review for *Ramos* application.

In brief, the State agreed with Sandifer's contention acknowledging that Sandifer's case was not final on direct appeal when the *Ramos* decision was issued. Specifically, the State provided that "the interests of justice require that the sentences for both convictions be vacated and the matter remanded to the trial court for further proceedings," and that it would be incumbent upon the State to pursue a second trial on the attempted distribution charge or to submit the matter to the trial court for resentencing in the remaining valid conviction. We agree.

4

In *Ramos*, *supra*, the United States Supreme Court held that the right to a jury trial under the Sixth Amendment, as incorporated against the states by the Fourteenth Amendment, requires a unanimous verdict to convict a defendant of a serious offense. The *Ramos* Court held:

> Wherever we might look to determine what the term "trial by an impartial jury trial" meant at the time of the Sixth Amendment's adoption–whether it's the common law, state practices in the founding era, or opinions and treatises written soon afterward–the answer is unmistakable. A jury must reach a unanimous verdict in order to convict.

*Ramos*, *supra*, at 1395.

The *Ramos* court concluded that under its ruling, defendants who have been convicted of serious offenses by nonunanimous juries and whose cases are still pending on direct appeal, may need to be retried by the state. *Ramos, supra,* at 1406. Thereafter, the Louisiana Supreme Court in *State v. Richardson*, 20-00175 (La. 6/3/20), 296 So. 3d 1050, in citing *Griffith v. Kentucky*, 479 U.S. 314, at 328, 107 S. Ct. 708, at 716 (1987), held that *Ramos* also applied to cases pending on direct review when *Ramos*, *supra*, was decided. If the nonunanimous jury claim was not preserved for review in the trial court or was abandoned during any stage of the proceedings, the court of appeal should, nonetheless, consider the issue as part of its error patent review. *State v. Corn*, 19-01892 (La. 6/3/20), 296 So. 3d 1043.

Although Sandifer did not challenge the nonunanimous jury verdict by an assignment of error on appeal in *Sandifer I*, this Court must now conduct a new error patent review. Our courts have held that an error patent is discoverable by a mere inspection of the pleadings and proceedings and without inspection of the evidence and can be considered on appeal. *State v.*

5

*Ardison*, 52,739 (La. App. 2 Cir. 3/31/21), 314 So. 3d 1158; *State v. Barnes*, 53,917 (La. App. 2 Cir. 5/5/21), 318 So. 3d 1100.

Here, the record reveals that after the jury was polled, Sandifer was unanimously convicted for distribution of methamphetamine. However, with respect to conviction for attempted distribution, the jury found her guilty by an 11-1 vote. Moreover, the matter was on direct appeal when *Ramos* was decided. Even if the issue was not properly preserved for appellate review, the error is nevertheless patent on the face of the record. Therefore, we find that because the verdict was not unanimous, Sandifer's conviction for attempted distribution of methamphetamine must be vacated and the case remanded for further proceedings.

*Excessive Sentence*

In the interest of thoroughness, we will detail the legal analysis of Sandifer's consecutive sentences as it was never addressed by the trial court on remand. Sandifer argues that the consecutive sentences of 25 years and 15 years, respectively, are unconstitutionally harsh and excessive under the particular facts and circumstances of this case. Sandifer further asserts that the trial court erred in failing to articulate reasons for imposing consecutive rather than concurrent sentences as directed by this Court in *Sandifer I* and in failing to tailor the sentences to her specifically in consideration of any mitigating factors. We agree.

Appellate review of sentences for excessiveness is a two-prong inquiry. Under the first prong, the record must show that the trial court considered the factors in La. C. Cr. P. art. 894.1. The primary goal of La. C. Cr. P. art. 894.1 is for the court to articulate the factual basis for the sentence imposed, and not simply mechanical compliance with its provisions.

6

However, if the record reflects that the trial judge adequately considered the guidelines of the article, then he is not required to list every aggravating or mitigating circumstance. *State v. Smith*, 433 So. 2d 688 (La. 1983); *State v. DeBerry*, 50,501 (La. App. 2 Cir. 4/13/16), 194 So. 3d 657, *writ denied*, 16-0959 (La. 5/1/17), 219 So. 3d 332.

Where the record clearly shows an adequate factual basis for the sentence imposed, remand is unnecessary even where there has not been full compliance with La. C. Cr. P. art. 894.1. *State v. Lanclos*, 419 So. 2d 475 (La. 1982); *State v. DeBerry, supra*. In sentencing, the important elements which should be considered are the defendant's personal history (age, familial ties, marital status, health, employment record), prior criminal record, seriousness of the offense, and the likelihood of rehabilitation. *State v. Jones,* 398 So. 2d 1049 (La. 1981); *State v. DeBerry, supra*. There is no requirement that specific matters be given any particular weight during sentencing. *State v. DeBerry, supra*; *State v. Shumaker*, 41,547 (La. App. 2 Cir. 12/13/06), 945 So. 2d 277, *writ denied*, 07-0144 (La. 9/28/07), 964 So. 2d 351.

Next, under the second prong of the analysis, the court must determine whether the sentence is constitutionally excessive. A sentence violates La. Const. art. I, § 20, if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering. *State v. Dorthey*, 623 So. 2d 1276 (La. 1993); *State v. Mandigo*, 48,801 (La. App. 2 Cir. 2/26/14), 136 So. 3d 292, *writ denied*, 14-0630 (La. 10/24/14), 151 So. 3d 600. A sentence is considered grossly disproportionate if, when the crime and punishment are viewed in light of the harm done to society, it shocks the sense of justice.

7

*State v. Weaver*, 01-0467 (La. 1/15/02), 805 So. 2d 166; *State v. Hollins*, 50,069 (La. App. 2 Cir. 8/12/15), 174 So. 3d 710.

Moreover, when determining whether a defendant's sentence is excessive, a reviewing court should compare the defendant's punishment with the sentences imposed for similar crimes by the same court or other courts. *State v. Johnston*, 50,706 (La. App. 2 Cir. 6/22/16), 198 So. 3d 151, *writ granted on other grounds*, 16-1460 (La. 6/5/17), 221 So. 3d 46; *State v. Ferguson*, 44,009 (La. App. 2 Cir. 2/25/09), 4 So. 3d 315.

A trial court maintains wide discretion to sentence within the statutory limits. Absent a showing of manifest abuse of such discretion, a sentence will not be set aside as excessive. Upon review, an appellate court does not determine whether another sentence may have been more appropriate, but whether the trial court abused its discretion. *State v. Davis*, 50,149 (La. App. 2 Cir. 11/18/15), 181 So. 3d 200; *State v. Weaver*, *supra*.

With respect to whether two or more sentences should be served concurrently or consecutively, La. C. Cr. P. art. 883 provides in part:

> If the defendant is convicted of two or more offenses based on the same act or transaction, or constituting parts of a common scheme or plan, the terms of imprisonment shall be served concurrently unless the court expressly directs that some or all be served consecutively. Other sentences of imprisonment shall be served consecutively unless the court expressly directs that some or all of them be served concurrently.

As this Court previously stated in *Sandifer I*, trial courts have limited discretion to order that multiple sentences can be served concurrently or consecutively. *Sandifer I*; *State v. Nixon*, 51,319 (La. App. 2 Cir. 5/19/17), 222 So. 3d 123, *writ denied*, 17-0966 (La. 4/27/18), 239 So. 3d 836; *State v. Allen*, 52,318 (La. App. 2 Cir. 11/14/18), 260 So. 3d 703. Concurrent sentences that arise from a single course of conduct are not mandatory;

likewise, consecutive sentences under those circumstances are not necessarily excessive. *State v. Nixon*, *supra*; *State v. Harris*, 52,663 (La. App. 2 Cir. 8/14/19), 277 So. 3d 912; *State v. Hebert*, 50,163 (La. App. 2 Cir. 11/18/15), 181 So. 3d 795.

However, a judgment directing that sentences arising from a single course of conduct be served consecutively requires particular justification from the evidence or record. *State v. Nixon*, *supra*. Accordingly, when consecutive sentences are imposed, the court shall state the factors considered and its reasons for the consecutive terms. Among the factors to be considered are: (1) the defendant's criminal history; (2) the gravity or dangerousness of the offense; (3) the viciousness of the crimes; (4) the harm done to the victims; (5) whether the defendant constitutes an unusual risk of danger to the public; and (6) the potential for the defendant's rehabilitation. However, the failure to articulate specific reasons for consecutive sentences does not require remand if the record provides an adequate factual basis to support consecutive sentences. *Sandifer I*; *Nixon*, *supra*.

As a general proposition, maximum or near-maximum sentences are reserved for the worst offenders and the worst offenses. *Sandifer I*; *State v. Collins*, 53,704 (La. App. 2 Cir. 1/13/21), 309 So. 3d 974; *State v. Cotton*, 50,747 (La. App. 2 Cir. 8/10/16), 201 So. 3d 299. However, the trial court nevertheless remains in the best position to consider the aggravating and mitigating circumstances of a particular case and is given broad discretion in sentencing. *State v. Cook*, 95-2784 (La. 5/31/96), 674 So. 2d 957, *cert. denied*, 519 U.S. 1043, 117 S. Ct. 615, 136 L. Ed. 2d 539 (1996).

After a thorough review of the transcript in the record, we find that the trial court failed to articulate adequate reasons for imposing the same

consecutive sentences. The presentence investigation ("PSI") report indicated that Sandifer, at the time of resentencing, is currently 43 years old and is classified as a first offender. Particularly, the PSI revealed that Sandifer had a misdemeanor charge of domestic abuse battery, but that it was dismissed in 2009; had misdemeanor charges for criminal trespass and possession of drug paraphernalia that are pending; and that she was arrested on July 8, 2017, for possession of a Schedule II CDS, methamphetamine, after her arrest for the instant offenses.

The record further reflects that before resentencing, Sandifer wrote to the trial court informing it of the steps she had taken to better herself while incarcerated. Specifically, Sandifer stated that during that time she had enrolled in a horticulture program, was granted minimum custody status, was a model inmate, and graduated from domestic violence and substance abuse classes. However, it does not appear from the record that the trial court considered these factors in resentencing Sandifer or tailored the sentences according to her individually.

Instead, the trial court appeared to state the same reasons for imposing the consecutive sentences as it did in *Sandifer I*. Because the trial court did not provide adequate reasons for imposing consecutive sentences, we find that Sandifer's conviction for distribution of methamphetamine is affirmed and the sentence is vacated for further consideration consistent with this opinion. Sandifer's conviction and sentence for attempted distribution of methamphetamine must be vacated and this matter is remanded to the trial court for further proceedings.

**CONCLUSION**

For the aforementioned reasons, Sandifer's conviction and sentence for attempted distribution of methamphetamine are vacated and remanded for new proceedings pursuant to *Ramos*, *supra*. In addition, we vacate Sandifer's sentence for distribution of methamphetamine and remand to the trial court for resentencing pursuant to this opinion.

**CONVICTION AND SENTENCE FOR ATTEMPTED DISTRIBUTION ARE VACATED AND REMANDED; CONVICTION FOR DISTRIBUTION IS AFFIRMED AND SENTENCE REMANDED FOR RESENTENCING.**

**HUNTER, J., concurring.**

The right to jury trial guaranteed by the Sixth Amendment of the United States Constitution, as incorporated against the states in the Fourteenth Amendment, is a fundamental right essential to prevent miscarriages of justice and to assure fair trials for all defendants. *Duncan v. Louisiana*, 391 U.S. 145, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968). In *Ramos v. Louisiana*, 590 U.S. __, 140 S.Ct. 1390, 206 L.Ed.2d 583 (2020), the U.S. Supreme Court held the right to jury trial requires a unanimous jury verdict to convict a defendant of a serious offense in state court. Thus, a felony conviction by non-unanimous jury verdict violates an accused's right to trial by jury and is unconstitutional.

Previously, in *Burch v. Louisiana*, 441 U.S. 130, 99 S.Ct. 1623, 60 L.Ed.2d 96 (1979), the U.S. Supreme Court determined a conviction by a non-unanimous jury of six members violated the Sixth Amendment right to jury trial. The U.S. Supreme Court then retroactively applied this jury-unanimity rule in *Brown v. Louisiana*, 447 U.S. 323, 100 S.Ct. 2214, 65 L.Ed.2d 159 (1980), recognizing trial by jury in serious criminal cases has long been regarded as an indispensable protection against the possibility of governmental oppression.

Thus, there is precedent for the retroactive application of a jury unanimity requirement. Unfortunately, in *Edwards v. Vannoy*, __U.S. __, 141 S.Ct. 1547, 209 L.Ed.2d 651 (2021), the U.S. Supreme Court declined to follow this precedent and held the *Ramos* jury-unanimity rule does not apply retroactively to cases on federal collateral review. However, as noted by the court in *Edwards*, the State of Louisiana retains authority to retroactively apply the jury-unanimity rule in state post-conviction

1

proceedings.  *See State v. Stringfellow*, 53,966 (La. App. 2 Cir. 6/30/21), 324 So. 3d 739.

In addition, an important consideration which supports retroactive application of the *Ramos* rule is the racial bias at the root of the non-unanimous jury provision.  As retired Chief Justice Johnson pointed out in her dissent in *State v. Gipson*, 2019-01815 (La. 6/3/20), 296 So. 3d 1051, given the original discriminatory purpose of Louisiana's non-unanimous jury law, with its disproportionate and detrimental impact on Black citizens for 120 years, it is time for Louisiana courts to address the damage done by the longtime use of this invidious law.

There is no principled justification for differentiating between the remedy provided to prisoners who were both convicted pursuant to this discriminatory law, with the only difference being the arbitrary circumstance that at the time the *Ramos* decision was rendered, one person's case was on direct review while the other person's conviction was final.  Both of their convictions are equally the product of a racist and unconstitutional law. Although the federal courts will not force this state through a writ of habeas corpus to remedy those convictions which are final, the moral and ethical obligation upon the courts of this state to address the racial stain of our own history is nevertheless compelling.  *Gipson, supra* (Johnson, C.J., dissenting).

The fiscal and administrative cost of giving new trials to all defendants convicted by non-unanimous jury verdicts pales in comparison to the long term societal cost of perpetuating, by our own acquiescence, a deeply ingrained distrust of law enforcement, criminal justice and Louisiana's governmental institutions.  Defendants convicted by non-

2

unanimous jury verdicts are prisoners of a law which was specifically designed to discriminate against them and to disproportionately silence Black jurors. At stake here is the very legitimacy of the rule of law, a concept which depends upon all citizens having confidence in the ability of the courts to apply equal justice. *See Gipson, supra* (Johnson, C.J., dissenting).

Based upon the foregoing considerations, I firmly believe the fundamental nature of the right to jury trial means the *Ramos* jury-unanimity rule must be applied retroactively in state post-conviction proceedings to overcome the harm done by the impairment of the jury's truth-finding function in past trials and to help restore the credibility of Louisiana's criminal justice system in the future.